EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Felipe Landrau Cabezudo y otros<br><br>Recurridos<br><br>v.<br><br>Autoridad de los Puertos de Puerto Rico y otros<br><br>Peticionarios | Certiorari<br><br>2025 TSPR 7<br><br>215 DPR ___ |

Número del Caso: AC-2024-0002

Fecha: 15 de enero de 2025

Tribunal de Apelaciones:

   Panel III

Representantes legales de la parte peticionaria:

   Lcdo. Luis R. Román Negrón
   Lcdo. José David Casillas Guevara

Representantes legales de la parte recurrida:

   Lcdo. Pedro Joel Landrau López

Materia: Derecho Laboral y Derecho Constitucional – Si un empleado unionado puede presentar una reclamación judicial en contra de su patrono para impugnar las escalas salariales acordadas mediante un Convenio Colectivo bajo la disposición constitucional de igual paga por igual trabajo; aplicación de la Doctrina de Cosa Juzgada cuando el dictamen previo es un Laudo Arbitral; término prescriptivo de reclamaciones sobre justa representación contra una organización sindical.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Felipe Landrau Cabezudo y otros<br><br>    Recurridos<br><br>        v.<br><br>Autoridad de los Puertos de Puerto Rico y otros<br><br>    Peticionarios | | AC-2024-0002 |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 15 de enero de 2025.

En el día de hoy tenemos la oportunidad de, entre otros asuntos, determinar si un empleado unionado puede presentar una reclamación judicial en contra de su patrono para impugnar las escalas salariales acordadas mediante un Convenio Colectivo bajo la disposición constitucional de igual paga por igual trabajo. Luego de un cuidadoso examen, contestamos esta interrogante en la negativa. Siendo ello así, concluimos que, en aras de proteger la política pública a favor de la negociación colectiva, invocar el principio de igual paga por igual trabajo resulta insuficiente para menguar el ejercicio válido del derecho a la negociación colectiva. No obstante, reafirmamos que la Unión Sindical, por su papel protagónico en la negociación y su deber de fiducia hacia sus representados, puede ser demandada en los foros judiciales mediante

una causa de acción sobre justa representación, por haberse desempeñado de manera dolosa en una negociación.

Además, el presente recurso nos permite pautar cómo deben proceder los tribunales al momento de aplicar la Doctrina de Cosa Juzgada cuando el dictamen previo es un Laudo Arbitral. Así las cosas, resolvemos que, al momento de realizar el análisis de las cosas, causas y partes, se debe prestar especial atención al lenguaje expreso del Acuerdo de Sumisión y del Convenio Colectivo. Lo anterior, tiene el fin de respetar la capacidad que tienen las partes de limitar las controversias que presentaron al árbitro.

Por último, atenderemos varios asuntos relacionados con la figura de la prescripción. En esa línea, reafirmamos que las reclamaciones salariales de empleados públicos en contra de su patrono tienen un término prescriptivo de tres (3) años, el cual comienza a transcurrir cuando estos cesan de trabajar para la entidad gubernamental. Además, tenemos la oportunidad de pautar cuál es el término prescriptivo aplicable a una reclamación sobre justa representación instada contra una organización sindical. Sobre este aspecto, concluimos que, en ausencia de legislación específica, en estas instancias es aplicable el término de un (1) año dispuesto por el Art. 1868 del Código Civil de 1930, *infra*, para casos de responsabilidad civil extracontractual. Veamos los hechos que dieron génesis a la controversia de autos.

## I.

La Autoridad de los Puertos de Puerto Rico (en adelante, la Autoridad o peticionaria) es una corporación pública e instrumentalidad gubernamental con existencia y personalidad legal

propia que está encargada de administrar las instalaciones de transporte y servicios aéreos y marítimos de la isla. *Véase*, Ley Núm. 125 de 7 de mayo de 1942, según enmendada, conocida como Ley de la Autoridad de los Puertos de Puerto Rico, 23 LPRA sec. 331 *et seq.* Los empleados de la Autoridad están agrupados en dos (2) unidades apropiadas para la negociación colectiva, una representada por la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas (en adelante, la HEO) y la otra por la Unión de Empleados de Muelles. Por su parte, los Sres. Felipe E. Landrau Cabezudo y José Alberto Santiago (en conjunto, los recurridos) son empleados de la Autoridad y ambos ocupan el puesto de Auxiliar de Agrimensor, el cual forma parte de la unidad apropiada de la HEO.

El 27 de abril de 2017, los recurridos presentaron una Demanda de impugnación de escalas salariales, titulada Querella. Plantearon que el puesto de Auxiliar de Agrimensor está colocado en una escala salarial por debajo de otros puestos, cuyos títulos hacen referencia al término "auxiliar", aun cuando se les requiere mayor preparación académica y realizan igual o más trabajo.[1] Según estos, lo anterior constituye una violación a la disposición de "igual paga por igual trabajo" de la Constitución de Puerto Rico, *infra*. En cuanto a la Autoridad, alegaron que esta fue negligente al no procurar que se revisara el Plan de Retribución para atender la disparidad. Además, esbozaron que la HEO falló en su deber de justa representación al negociar los Convenios Colectivos y no procurar la revisión del Plan de Retribución. Siendo ello así, solicitaron la equiparación

---

[1] Apéndice del recurso de apelación, pág. 845.

del puesto y el pago de los salarios y beneficios marginales dejados de percibir por el tiempo en que estuvieron en una escala inferior a la correspondiente.[2]

El 13 de julio de 2017, la HEO solicitó la desestimación de la reclamación. Por su parte, los recurridos y la Autoridad presentaron sus respectivas Solicitudes de Sentencia Sumaria el 9 de marzo de 2018 y el 27 de abril de 2018. Así las cosas, el 31 de julio de 2018, el Tribunal de Primera Instancia emitió dos Resoluciones denegando las mociones dispositivas por entender que existían varias controversias de hechos materiales.[3] Además, identificó varios hechos incontrovertidos, entre ellos los siguientes:

> 1. El pasado 15 de octubre de 1996, la Autoridad de los Puertos (en adelante AP o Patrono o Agencia) y la HEO firmaron una Estipulación que acabó luego de la negociación del Convenio Colectivo de 1993-1996. (Exhibit I).
>
> 2. La mencionada Estipulación enmendó varios de los artículos del convenio colectivo vigente en esa época.
>
> 3. En específico, se enmendó el Artículo de Retribución y Clasificación para parear los salarios de clasificaciones iguales o que realicen las mismas funciones en otras de las unidades apropiadas de la AP con los de los unionados que pertenecen a la HEO.
>
> [. . .]
>
> 9. En el año 2012, la HEO negoció un nuevo convenio colectivo con la AP con vigencia hasta el año 2016 en el cual el Artículo de Retribución y Clasificación se mantuvo igual, no sufrió ningún tipo de cambio y fue ratificado por la matrícula de la HEO.[4]

---

[2] Apéndice del recurso de apelación, pág. 847.

[3] Tanto la HEO como la Autoridad acudieron separadamente al Tribunal de Apelaciones mediante peticiones de *certiorari* presentadas el 30 de agosto de 2018 y el 19 de septiembre de 2018, respectivamente. Luego de consolidar los recursos, el 21 de diciembre de 2018, el foro apelativo intermedio emitió una Resolución y denegó la expedición de los autos. Apéndice del recurso de apelación, págs. 799-812. Posteriormente, este Tribunal denegó expedir un recurso de *certiorari* presentado por la Autoridad (CC-2019-0125).

[4] Apéndice del recurso de apelación, págs. 800-801.

Luego de varias incidencias procesales, el 4 de noviembre de 2022, la Autoridad presentó una nueva Solicitud de Sentencia Sumaria. En esta, arguyó, en primer lugar, que era aplicable la Doctrina de Cosa Juzgada o de Impedimento Colateral por Sentencia, debido a que existía un procedimiento de arbitraje anterior (Caso Núm. A-14-628) que fue celebrado ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos (Negociado de Arbitraje), y participaron todas las partes. Dicho proceso culminó con un Laudo que desestimó una Querella presentada por la HEO en representación de los unionados que ejercían el puesto de Auxiliar de Agrimensor. Según la Autoridad, el Laudo emitido el 17 de octubre de 2016, impedía el procedimiento judicial.

En segundo lugar, la Autoridad planteó que las reclamaciones presentadas estaban prescritas. Arguyó que las reclamaciones de igual paga por igual trabajo y de negligencia, por no corregirse la disparidad salarial, eran de naturaleza extracontractual. Según la peticionaria, la reclamación de los recurridos le imputaba a la Autoridad haber actuado de manera dolosa al negociar los Convenios Colectivos con la HEO, por lo que aplicaba el término prescriptivo de un (1) año. Según esta, el término comenzó a transcurrir el 13 de diciembre de 2012 cuando se suscribió el último Convenio Colectivo entre la Autoridad y la HEO.

Además, planteó que los recurridos estaban impedidos de ventilar su reclamación por la vía judicial por estos haber consentido a través de la HEO a los Convenios Colectivos. Particularmente, señaló que el alto interés público que revisten estos acuerdos y sus efectos vinculantes impedía que miembros

individuales de la HEO, beneficiarios de la negociación colectiva, pudieran cuestionar los asuntos ya pactados y consentidos por ellos. Arguyó que, de haber estado insatisfechos con la negociación llevada a cabo, los recurridos tenían como único remedio una acción en contra de su representante sindical, bajo la Doctrina de "Justa Representación".

Por último, adujo que los recurridos no pudieron establecer que las otras clases de puestos "auxiliares" realizaran funciones de igual o similar naturaleza a la clase de Auxiliar de Agrimensor. Sostuvo que las especificaciones de cada uno de los puestos con el término de "auxiliar" revelaban que estos poseían deberes, responsabilidades y requisitos de reclutamiento distintos. Señaló que tanto el Convenio Colectivo como el Plan de Clasificación de la Autoridad no agrupaban los puestos titulados como "auxiliares" dentro de la misma clase ocupacional. Por tanto, expuso que el hecho de que varios puestos compartieran el término de "auxiliar" no implicaba que estos fuesen comparables, perteneciesen a una misma clase ocupacional o realizaran tareas de igual naturaleza.[5]

En su Oposición a Solicitud de Sentencia Sumaria, los recurridos plantearon, primero, que la Doctrina de Cosa Juzgada no era aplicable. Arguyeron que no existía un Laudo en donde se hubiese adjudicado la constitucionalidad de las escalas salariales de la Autoridad. Señalaron que, en el Laudo emitido el 17 de octubre de 2016, el Negociado de Arbitraje se restringió únicamente a un asunto de reasignación de puesto por parte de la Autoridad. De igual forma,

---

[5] Por su parte, el 10 de noviembre de 2022, la HEO presentó una moción a los fines de unirse a la Solicitud de Sentencia Sumaria presentada por la Autoridad.

señalaron que la HEO, quien representó a los recurridos ante el Negociado, no planteó la inconstitucionalidad del Convenio Colectivo y las Escalas Salariales.

Además, sostuvieron que la reclamación no estaba prescrita y que la Autoridad omitió que el Convenio Colectivo, el cual expiró el 30 de septiembre de 2016, se renovaba diariamente debido a la Cláusula de Renovación Automática. De otra parte, arguyeron que era aplicable el plazo trienal a favor de las reclamaciones salariales de los empleados públicos. En la alternativa, plasmaron que aplicaba la Doctrina de Daños Continuos, *Rivera Prudencio v. Municipio de San Juan*, *infra*, o la Doctrina de Violación Continua según discutida por este Tribunal en *J.R.T. v. A.E.E.*, *infra*, y *U.G.T. v. Corp. Difusión Pub.*, *infra*.

A su vez, afirmaron que el obrero tiene facultad de acudir a los tribunales para impugnar los acuerdos plasmados en un Convenio Colectivo cuando este es de carácter discriminatorio. Además, señalaron que de la prueba surgía que los Auxiliares de Agrimensor reciben un salario inferior a otros auxiliares, aun cuando están en una escala de clasificación superior y cuando se les exige mayor preparación académica y experiencia profesional. Afirmaron que la Autoridad y la HEO no han logrado explicar la razón por la cual otros puestos que requieren menos esfuerzo y experiencia reciben una compensación superior. Sostuvieron que, al negociar el Convenio Colectivo, en particular el Art. XX y el Exhibit-A, se trastocó la organización y clasificación de los empleados, colocando los salarios de empleados de menor jerarquía por encima de otros de mayor jerarquía.

Esbozadas las posturas, el 23 de mayo de 2023, el Tribunal de Primera Instancia emitió una Resolución y declaró No Ha Lugar la solicitud de la Autoridad. En particular determinó que existía controversia sobre:

> 1. Las razones por las cuales, a los, Auxiliares de Agrimensura, a quienes se les requiere una preparación académica superior en comparación con otros puestos y realizan igual o más trabajo que otros Puestos, se encuentran en una escala de retribución menor a la de otros auxiliares a los cuales no se les requiere cursos universitarios, y se encuentran en una clasificación inferior.
>
> 2. Si los títulos de puesto que llevan la designación de auxiliar tienen algún tipo de similitud o igualdad que les permita ser asignados a una misma clase de retribución.
>
> 3. Los criterios utilizados por la APPR y la HEO para excluir a los empleados del puesto de Auxiliar de Agrimensura de la Estipulación que buscaba paridad salarial entre los empleados de la HEO y la UDEM.
>
> 4. Si el Convenio Colectivo y su cláusula de renovación diaria discrimina contra los empleados del puesto de Auxiliar de Agrimensura.[6]

Además, en lo pertinente a la controversia de autos, determinó que los hechos siguientes estaba incontrovertidos:

> 1. La APPR y la HEO suscribieron convenios colectivos en 1993, 1996, 2000 y 2012. En los convenios de estos cuatro años se le reconoce a HEO como representante exclusiv[o] de todos los trabajadores incluidos en la unidad apropiada para negociar colectivamente respecto a sus salarios, jornadas de trabajo, quejas y agravios y otras condiciones que afecten el empleo de los trabajadores cubiertos por los mencionados convenios.
>
> 2. Los convenios de 1993, 1996, 2000 y 2012 proveen para la administración de los puestos que formen parte de la unidad apropiada representada por la HEO sean administradas mediante un plan de clasificación de puestos (Plan de Clasificación de la HEO).
>
> [. . .]

---

[6] Apéndice del recurso de apelación, pág. 24.

5. Para asignar cada clase de puesto a una escala salarial, el plan de clasificación agrupa los puestos en Grupos Operacionales y/o escalas retributivas.

[. . .]

7. Para principios de 1996, la unidad apropiada representada por la HEO y la unidad apropiada representada por la Unión de Empleados de Muelles (en adelante, "UDEM") representaban algunos trabajadores que ostentaban puestos asignados a clasificaciones iguales o similares.

8. El 15 de octubre de 1996, la APPR y HEO suscribieron una *Estipulación* la cual otorgaba un aumento salarial adicional al mencionado en el párrafo Tercero, inciso(A) de la Estipulación, el cual tenía como propósito obtener la paridad salarial para empleados que realizan las mismas tareas, ello en un plazo no menor a cinco años a partir del 1 de octubre de 1996.

9. Los empleados en los puestos que conformaban la clase de Auxiliares de Agrimensura, estaban representados únicamente por la HEO y no tenían clasificaciones similares o iguales en la unidad representada por la UDEM, por lo que fueron excluidos del aumento por concepto de paridad salarial acordado en la Estipulación.

[. . .]

13. El 28 de enero de 2013, varios empleados que ocupaban el puesto de Auxiliar de Agrimensura solicitaron el formulario correspondiente para iniciar un trámite de evaluación de la clase de [Auxiliar de Agrimensura] para la reclasificación del mencionado puesto.

14. Producto de la evaluación solicitada por varios de los empleados del puesto de Auxiliares de Agrimensura, la APPR concluyó que procedía ubicar a los Auxiliares de Agrimensura al grupo ocupacional 8 y, por ende, a la escala de retribución 8.

[. . .]

17. El 4 de septiembre de 2013, en representación de los empleados del puesto de Auxiliares de Agrimensura (entre ellos los demandantes), la HEO presentó una solicitud para la designación o selección de un árbitro, imputando a la APPR haber incumplido con el procedimiento que proveen los Arts. XII y XIII del Convenio Colectivo en la reasignación de puestos.

[. . .]

19. El 17 de octubre de 2016, [el] Negociado de Arbitraje emitió un laudo en que concluyó que la APPR realizó correctamente y cumplió con el procedimiento de

reasignación de puestos de los demandantes, según las disposiciones del convenio.

20. El puesto de Auxiliar de Agrimensor requiere, como uno de sus requisitos mínimos, preparación académica de Grado Asociado en Tecnología de Ingeniería Civil con concentración de Agrimensura.

21. Aun cuando a Landrau Cabezudo y Santiago Rodríguez se les requiere una preparación académica superior en comparación con otros puestos, y realizan igual o más trabajo que otros puestos, estos se encuentran en una escala de retribución por debajo de otros auxiliares que no requieren cursos universitarios, y se encuentran en una clasificación inferior.[7]

Por otro lado, concluyó que no se configuró la Doctrina de Cosa Juzgada al no existir identidad entre cosas y causas. Señaló que la controversia sometida a arbitraje era si la Autoridad incumplió con los procedimientos del Convenio Colectivo sobre la reasignación de puestos, no sobre la constitucionalidad de las escalas de retribución pactadas. Inclusive, entendió que en el proceso de arbitraje no se adjudicaron hechos esenciales que activaran la Doctrina de Impedimento Colateral. Además, concluyó que los recurridos podían impugnar el Convenio Colectivo bajo la Doctrina de Justa Representación. Por último, entendió que era necesario determinar si las escalas de retribución discriminaban arbitrariamente en contra de los recurridos para estar en posición de entrar en los méritos sobre el asunto de prescripción y el reclamo de igual paga por igual trabajo.

Inconforme, la peticionaria presentó una Moción de Reconsideración y Solicitud de Determinaciones de Hechos

---

[7] Apéndice del recurso de apelación, págs. 21-24.

Adicionales. Sin embargo, la misma fue denegada mediante Resolución emitida el 20 de junio de 2023.[8]

Aún insatisfecha, la Autoridad presentó un recurso de *Certiorari* ante el Tribunal de Apelaciones el 18 de julio de 2023. En este, arguyó nuevamente lo sostenido en la Solicitud de Sentencia Sumaria y en la Moción de Reconsideración. El 31 de octubre de 2023, el foro apelativo intermedio notificó una Sentencia mediante la cual confirmó el dictamen. Determinó que no aplicaba la Doctrina de Cosa Juzgada o de Impedimento Colateral por Sentencia porque el foro arbitral atendió una controversia distinta a la presentada ante los tribunales. Además, concluyó que la doctrina era inaplicable porque según el Convenio Colectivo la Árbitro no podía atender controversias de índole constitucional.

Por otro lado, concluyó que la Demanda no estaba prescrita. En particular, dispuso que conforme a lo resuelto en *J.R.T. v A.E.E., infra*, las reclamaciones por salarios dejados de percibir eran de carácter continuo. Además, entendió que siendo los recurridos empleados públicos los términos prescriptivos no podían transcurrir por haberse presentado la Demanda mientras estos estaban empleados.

Por último, concurrió con el foro primario en que no se podía adjudicar la reclamación de igual paga por igual trabajo por existir hechos en controversia. Sin embargo, resolvió que los recurridos podían invocar la Cláusula Constitucional para cuestionar la disparidad salarial. Lo anterior en rechazo de una determinación previa de ese foro emitida en *Castro García y otros v. Autoridad de*

---

[8] La Resolución fue notificada a las partes el 21 de junio de 2023.

*los Puertos y otros*, Caso Núm. KLAN201900511, donde "se concluyó que no existe una causa de acción por violación al principio constitucional de igual paga por igual trabajo, cuando el salario se acordó en un convenio colectivo y no se planteó discrimen por sexo o cuando existe alguna de las razones en las que se justifica la disparidad salarial".[9]

No conteste con lo resuelto, y tras solicitar una reconsideración, la Autoridad recurrió ante nos mediante un Recurso de Apelación, en el que señaló los errores siguientes:

> Erró el TA al reconocer una causa de acción promovida por empleados unionados particulares en contra de su propia unión y patrono, bajo la doctrina de igual paga por igual trabajo, cuando las escalas impugnadas son el resultado de la negociación colectiva y surgen de un convenio válido.

> Erró el TA, como cuestión de derecho, al rechazar desestimar la demanda al no aplicar la doctrina de cosa juzgada o impedimento colateral por sentencia.

> Erró el TA, como cuestión de derecho, al dejar en suspenso una determinación sobre prescripción cuando existe un impedimento para ejercer autoridad para entender en el presente caso.

> Erró el TA, como cuestión de derecho, al no desestimar la causa de acción, a pesar de que el reclamo sobre igual paga por igual trabajo resulta ser inmeritorio ya que la parte apelada no ha establecido que el puesto de auxiliar de agrimensor lleva a cabo tareas y funciones de igual naturaleza que los otros puestos de auxiliares con quienes se pretende comparar.

Evaluado el escrito presentado por la peticionaria, el 21 de marzo de 2024 acogimos el mismo como un *certiorari*, por ser el recurso apropiado, y expedimos. Contando con la comparecía de ambas partes, el asunto quedo sometido, por lo que procedemos a resolver.

## II

---

[9] Sobre este asunto el Juez Rodríguez Flores disintió y expresó que entendía que no procedía una causa de acción bajo la figura de igual paga por igual trabajo, ni una acción por daños y perjuicios. De esta manera, aseveró estar conforme con lo resuelto por el Tribunal de Apelaciones en el KLAN201900511.

La Autoridad plasmó varias controversias de derecho para la consideración de este Tribunal, a saber: (1) si la causa de acción está prescrita; (2) si aplica la Doctrina de Cosa Juzgada y de Impedimento Colateral por Sentencia; y (3) si existe una causa de acción bajo la Doctrina de Igual Paga por Igual Trabajo en contra del patrono para impugnar las escalas salariales que surgen de un Convenio Colectivo.[10]

Así las cosas, comenzamos atendiendo la controversia sobre si la reclamación de los recurridos en contra de la Autoridad y la HEO estaba prescrita cuando esta se presentó el 27 de abril de 2017. Recapitulando, el Tribunal de Primera Instancia concluyó que no estaba en posición de determinar si la reclamación estaba prescrita hasta tanto resolviera si las escalas de retribución discriminaban arbitrariamente en contra de los recurridos. Por su parte, el Tribunal de Apelaciones entendió, primero, que conforme a *J.R.T. v. A.E.E.*, *infra*, las reclamaciones contra el patrono por salarios dejados de percibir son de carácter continuo y la causa de acción de los demandantes surge nuevamente, cada vez que la Autoridad le paga el salario con la alegada disparidad salarial. Además, entendió que, acorde con lo resuelto en *Acevedo Arocho v. Departamento de Hacienda*, *supra*, la prescripción no aplica porque la Demanda por

---

[10] Rechazamos el argumento de que los planteamientos que fueron levantados ya fueron adjudicados y constituyen ley del caso. El hecho de que denegamos expedir el recurso de *certiorari* CC-2019-0125, presentado por la Autoridad no constituye una determinación definitiva sobre estos asuntos. La denegatoria a expedir no implica la ausencia de error en un dictamen, ni constituye una adjudicación en los méritos, sino que es corolario del ejercicio de la facultad discrecional del foro apelativo de no intervenir a destiempo con el trámite pautado por el foro de instancia. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

salarios se presentó por empleados públicos mientras estos continuaban en el empleo.

**A.**

Es alto conocido que las acciones prescriben por el mero transcurso del tiempo fijado por la ley. Art. 1861 del Código Civil de 1930, 31 LPRA ant. sec. 5291.[11] Además, en nuestra jurisdicción, la figura de la prescripción es materia de derecho sustantivo y no procesal, regida expresamente por el Código Civil. *Nevárez Agosto v. United Surety*, 209 DPR 346, 356 (2022). Esta tiene el propósito de castigar la inercia y estimular el ejercicio rápido de las acciones. *Xerox Corp. v. Gómez Rodríguez*, 201 DPR 945, 952 (2019). Por tanto, el transcurso del tiempo establecido por ley sin que el titular de la acción la reclame, da lugar a una presunción legal de abandono. *Meléndez Guzmán v. Berríos López*, 172 DPR 1010, 1017-1018 (2008) (citando a *García Aponte v. E.L.A.*, 135 DPR 137, 142 (1994)).

En las acciones por daños, los términos prescriptivos comienzan a transcurrir desde que el agraviado tuvo o debió tener conocimiento del daño y estuvo en posición de ejercer su causa de acción. *Rivera Ruiz v. Mun. de Ponce*, 196 DPR 410, 416 (2016). Además, nuestro ordenamiento reconoce varios tipos de daños, entre los cuales se encuentran los denominados daños continuados. Aunque se refiere a daños, se ha clarificado que lo que en realidad es continuo en estos escenarios es el acto u omisión que produce el daño. *Íd.*, pág. 417. Hemos explicado que los daños continuados se tratan de lesiones causadas por una conducta torticera continua que genera una sola

---

[11] Si bien el Código Civil de 1930 fue derogado por el Código Civil de 2020, hacemos referencia al primero por ser el estatuto vigente al momento de los hechos de este caso.

causa de acción que comprende todos los daños ciertos, tanto los actuales como los previsibles en el futuro. *Íd.* En estos casos lo continuo o progresivo no es el daño o perjuicio ocasionado, sino la causa que lo origina y que produce resultados razonablemente previsibles. *Íd.*, pág. 418 (citando a *Arcelay v. Sánchez*, 77 DPR 824, 838 (1955)). **Siendo ello así, hemos resuelto que el término prescriptivo para incoar una acción por daños continuos "comienza a transcurrir cuando se verifiquen los últimos actos u omisiones o se produce el resultado definitivo, lo que sea posterior".** (Negrilla suplida). *Íd.*, pág. 426.

Por otra parte, este Tribunal ha atendido el asunto de la prescripción de las reclamaciones salariales de un empleado público. En *Aponte v. Srio. de Hacienda, E.L.A.*, 125 DPR 610, 621-622 (1990), **reconocimos que, en ausencia de legislación especial, la prescripción de las reclamaciones salariales de los servidores públicos se rige por los postulados del Código Civil.** Así las cosas, luego de un estudio del sistema de prescripción de las acciones del Código Civil destacamos que el término de tres (3) años del Art. 1863 del Código Civil de 1930, 31 LPRA ant. sec. 5297, "afecta todos los créditos, derivados de un contrato de trabajo o de servicios, como precio o remuneración de los servicios o del trabajo prestado". *Íd.*, pág. 620 (citando a L. Díez-Picazo, *La prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, pág. 208). Por tanto, resolvimos que el Art. 1863 del Código Civil de 1930, *supra*, rige el plazo para ejercitar una acción de reclamación de salarios de un empleado gubernamental y que el término se "**contará desde que se dejasen de prestar los respectivos servicios".** (Negrilla suplida).

*Íd.*, pág. 622. Así las cosas, en *Acevedo v. Depto. de Hacienda*, 212 DPR 335, 357 (2023), resumimos que el plazo se computa desde que:

> (1) el empleado cese de trabajar para su patrono; (2) cuando interrumpa sus servicios por un periodo de tiempo sin explicación para ello, aunque el patrono lo vuelva a emplear, o (3) cuando sin dejar de trabajar para el patrono, opera una novación del contrato por motivos de cambios sustanciales en la naturaleza de los servicios que el obrero venía prestándole.

Por ende, **"no cabe hablar de prescripción si el empleado público se encontraba trabajando a la fecha en que se presentó la acción judicial sobre salarios dejados de pagar"**. (Negrilla suplida). *Íd.*, pág. 360.

## B.

El deber de justa representación es una doctrina de creación judicial que "proclama la obligación de toda unión de servir de buena fe, sin discrimen ni arbitrariedad, a los intereses de sus representados miembros". *F.S.E v. J.R.T.*, 111 DPR 505, 516-517 (1981); *J.R.T. v. U.T.I.G.*, 110 DPR 237, 243 (1980). Dicho deber fue desarrollado por el Tribunal Supremo de los Estados Unidos en una trilogía de casos en donde se alegó discrimen racial por parte de la Unión certificada. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).[12] Conforme con esta doctrina, la Unión tiene un deber fiduciario a favor del unionado al momento de ejercer sus poderes como representante sindical, tanto en la negociación colectiva como en el procesamiento de quejas.

---

[12] Véase, además, *Steele v. Louisville & N.R. Co.*, 323 U.S. 192 (1944); *Tunstall v. Brotherhood of Locomotive Firemen*, 323 U.S. 210 (1944) y *Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953).

No obstante, este deber no es irrestricto; la determinación de la Unión no puede ser intencionalmente arbitraria, caprichosa o discriminatoria, sino que al actuar de manera discrecional esta debe proceder de manera honesta y fundada en una investigación completa y justa. *J.R.T. v. U.T.I.G.*, *supra*, págs. 243-244. En el proceso de quejas, "[e]l deber de justa representación no exige que una unión procese toda queja de los empleados. Pero requiere, una vez puesto en funcionamiento el mecanismo de quejas y agravios, que la unión la tramite en una forma que no sea perfunctoria, hostil o arbitraria. En síntesis, el deber de la Unión se proyecta en una representación razonable, diligente y responsable". *J.R.T. v. Unión de Tronquistas*, 117 D.P.R. 790, 795-96 (1986).

En cuanto al término prescriptivo para que un obrero pueda presentar una reclamación judicial por deber de justa representación, la Ley Núm. 130 de 8 de mayo de 1945, según enmendada, conocida como Ley de Relaciones del Trabajo de Puerto Rico, 29 LPRA sec. 61 *et seq.* (Ley Núm. 130-1945) no expresa término prescriptivo aplicable. Esta problemática fue también enfrentada por los foros federales.

En *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 154-155 (1983), el Tribunal Supremo de los Estados Unidos tenía que determinar cuál era el término aplicable para presentar una reclamación en donde se alegó que el patrono incumplió con el Convenio Colectivo y que la Unión violentó su deber de justa representación por el mal manejo del Procedimiento de Quejas y Arbitraje. Así las cosas, el Tribunal, por voz del Juez Brennan

recalcó que, en ausencia de una limitación estatutaria, se utilizaba el término análogo dispuesto por la legislación estatal. *Íd.*, pág. 158.[13] No obstante, destacó que lo anterior no aplica cuando las normas estatales están en conflicto con la operación o la intención de la ley sustantiva federal. *Íd.*, pág. 161. Reseñó que, en tales casos, se puede recurrir a aplicar las normas de prescripción de otras leyes federales cuando su aplicación por analogía es razonable y estas fueron diseñadas para acomodar un balance de intereses similares a los que están en juego. Específicamente, se dispuso que:

> These objections to the resort to state law might have to be tolerated if state law were the only source reasonably available for borrowing, as it often is. In this case, however, we have available a federal statute of limitations actually designed to accommodate a balance of interests very similar to that at stake here—a statute that is, in fact, an analogy to the present lawsuit more apt than any of the suggested state-law parallels. We refer to § 10(b) of the National Labor Relations Act, which establishes a six-month period for making charges of unfair labor practices to the NLRB. *Íd.*, pág. 169.

## C. Doctrina de Violación Continua

En el ámbito del arbitraje laboral, nuestra jurisprudencia ha reconocido la Doctrina de Violación Continua cuyo efecto consiste en renovar los términos provistos en un Convenio Colectivo para reclamar bajo el Procedimiento de Quejas y Agravios.[14] Esta doctrina

---

[13] Específicamente, expresó que: "As is often the case in federal civil law, there is no federal statute of limitations expressly applicable to this suit. In such situations we do not ordinarily assume that Congress intended that there be no time limit on actions at all; rather, our task is to "borrow" the most suitable statute or other rule of timeliness from some other source. We have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law." *DelCostello v. International Broth. of Teamsters*, *supra*, pág. 158.

[14] No ha de ser confundida con la ya reseñada Doctrina de Daños Continuados aplicable a casos de responsabilidad extracontractual.

opera como "excepción a la norma general que presupone el cumplimiento específico de los términos negociados por las partes y recogidos en el convenio colectivo". *U.G.T. v. Corp. Difusión Púb.*, 168 DPR 674, 691 (2006). Sobre el particular, comenta D. Fernández Quiñones que:

> El agravio puede ser de carácter continuo. La naturaleza de este tipo de agravio es que el mismo surge o se renueva de día a día y, por tanto, se puede presentar en cualquier momento mientras la violación contractual continúe y se interponga el agravio durante el período prescrito contractualmente. D. Fernández Quiñones, *op. sic.*, pág. 237.

En *J.R.T. v. A.E.E.,* 113 DPR 564, 565-567 (1982) (*Per Curiam*), señalamos que la reclamación ante un árbitro de un aumento por años de servicio que surgía del Convenio Colectivo era "una de carácter continuo" ya que "[c]ada vez que la Autoridad paga el salario sin incluir el aumento por años de servicio, surge nuevamente la causa de acción". Por lo cual, esta podía ser presentada luego de haber trascurrido los términos dispuestos en el Convenio Colectivo para presentar quejas y agravios.

En *U.G.T. v. Corp. Difusión Púb.*, *supra*, notamos que en el derecho laboral norteamericano la Doctrina de Violación Continua aplica:

> [C]uando se reclama por los daños causados como resultado de la negativa patronal de remunerar al empleado en la proporción establecida en la clasificación a la que fue asignado y a la cual tiene derecho según el convenio; o, cuando no se le otorga un aumento de salario por mérito conforme dispone el convenio. [...]
>
> En el campo laboral, la doctrina de violación continua no opera automáticamente, pues se exige lo siguiente: primero, que el tiempo transcurrido entre el momento en que expiró el plazo y cuando en efecto se presentó la correspondiente queja o agravio, no haya sido excesivo; segundo, que haya justa causa para la dilación y así lo demuestre el querellante, y tercero, que la

tardanza no perjudique al patrono al dificultar severamente su capacidad para defenderse de la querella presentada. *Íd.*, pág. 692 (citas omitidas).

Expuesto el marco normativo procedemos a resolver si la reclamación de los recurridos está prescrita.

**D.**

En primer lugar, descartamos la aplicación de *J.R.T. v. A.E.E.*, *supra*, y *U.G.T. v. Corp. Difusión Púb.*, *supra*, por ser distinguibles al caso de autos. Lo resuelto en esos casos no es aplicable a reclamaciones salariales presentadas por la vía judicial. **La Doctrina de Violación Continua, esbozada en esta secuela de precedentes, aplica a los procedimientos de arbitraje obrero-patronal como excepción al cumplimiento específico con los términos pactados en un Convenio Colectivo para el Procedimiento de Quejas, Agravios y Arbitraje.**

Ahora bien, es importante notar que estamos ante una reclamación mixta. Por una parte, los recurridos reclaman en contra de la Autoridad bajo el principio de igual paga por igual trabajo y, por otra, en contra de la HEO por incumplimiento con el deber de justa representación. Aunque ambas reclamaciones comparten hechos materiales, cada una está regida por términos prescriptivos distintos.

En cuanto a la Autoridad, concluimos que la reclamación en su contra no está prescrita. Lo resuelto en *Acevedo v. Depto. de Hacienda*, *supra*, aplica a la controversia de autos. Así las cosas, el término prescriptivo aplicable a la reclamación en contra de la Autoridad es el de tres (3) años dispuesto en el Art. 1863 del Código Civil de 1930, *supra*. Este término comenzaría a transcurrir

al momento en que los recurridos cesen de trabajar para la Autoridad. Por su parte, la Autoridad arguyó que la controversia de autos es distinguible a *Acevedo v. Depto. de Hacienda*, *supra*, dado a que los aquí recurridos no fundamentaron su reclamo en las mismas leyes sobre salarios que los allí demandantes.

Como ya recalcamos, *Aponte v. Srio. de Hacienda, E.L.A.*, *supra*, pág. 620 y *Acevedo v. Depto. de Hacienda*, *supra*, resolvieron que, en ausencia de un mandato legislativo, las reclamaciones de empleados públicos por créditos derivados de un contrato de trabajo o de servicios, como precio o remuneración de los servicios o del trabajo prestado, tendrán un término prescriptivo de tres (3) años desde que dejaron de prestarse los servicios. **En este caso, la reclamación hecha contra la Autoridad es por salarios dejados de percibir.** Esto se basa en que se alegó que esta tenía un deber, bajo el principio de igual paga por igual trabajo, de equiparar el puesto de Auxiliar de Agrimensor con los otros puestos auxiliares.[15]

**Por otro lado, en cuanto a la HEO, resolvemos que su reclamación no está prescrita.** La causa de acción por violentar el deber de justa representación prescribe, aun cuando este Tribunal nunca ha pautado el término aplicable. La Ley Núm. 130-1945, *supra*,

---

[15] Lo anterior resulta comparable con las situaciones plasmadas en la jurisprudencia señalada. En *Aponte v. Srio. de Hacienda, E.L.A.*, *supra,* págs. 615-616, miembros de la uniformada recurrieron al foro judicial para que se les otorgasen los aumentos correspondientes a varios pasos concedidos por leyes aprobadas entre 1962-1967 y "por la Ley de la Policía de Puerto Rico de 1974, Ley Núm. 26 de 22 de agosto de 1974 (25 LPRA sec. 1001 et seq.), para los años fiscales 1974-1975, 1975-1976 y 1976-1977".

En *Acevedo v. Depto. de Hacienda*, *supra*, pág. 340, los empleados reclamaron, en síntesis, que las agencias demandadas erradamente implementaron el salario mínimo federal privándoles de sus beneficios salariales bajo "la Ley de Personal del Servicio Público de Puerto Rico, 3 LPRA ant. sec. 1301 et seq. (Ley de Personal), y la Ley Núm. 89 de 12 de julio de 1979, mejor conocida como la Ley de Retribución Uniforme, 3 LPRA ant. sec. 760 et seq. (Ley de Retribución)".

no contiene término prescriptivo para estas reclamaciones, y contrario a su ley federal análoga (*Labor Management Relations Act*), la Ley Núm. 130-1945, *supra*, tampoco dispone de un término para presentar cargos por prácticas ilícitas del trabajo.[16] Siendo ello así, conforme a nuestros pronunciamientos previos, en ausencia de un término dispuesto por ley, en las acciones civiles ordinarias la prescripción se rige por los postulados del Código Civil, *supra*. *Aponte v. Srio. de Hacienda*, E.L.A., *supra*, págs. 618-619.

Así pues, concluimos que aplica por analogía el término de un (1) año dispuesto en el Art. 1868 del Código Civil de 1930, 31 LPRA ant. sec. 5298, para reclamaciones de daños extracontractuales. Esto se debe a que la reclamación por daños extracontractuales es análoga al deber de justa representación. Este término comienza a transcurrir desde que los recurridos conocen o debieron conocer de la violación de dicho deber.

Tanto de *F.S.E. v. J.R.T*, *supra*, pág. 517; *J.R.T. v. U.T.I.G.*, *supra*, págs. 243-244; como de *J.R.T. v. Unión de Tronquistas*, *supra*, págs. 795-797, se desprende que, en una reclamación de justa representación, el empleado debe demostrar que la Unión actuó de mala fe, o de forma arbitraria o discriminatoria, y que dicho proceder le ocasionó un daño. Esto es comparable a una reclamación

---

[16] Por lo anterior, tampoco es aplicable el término de seis (6) meses que dispuso la Corte Suprema de los Estados Unidos en *DelCostelo v. Teamster*, *supra*, págs. 169-171, la Sección 10(b) del *Labor Management Relations Act* disponía de un término de seis (6) meses para presentar cargos por prácticas ilícitas del trabajo ante la Junta Nacional de Relaciones del Trabajo. Según el foro federal la similitud de los derechos ejercidos en una reclamación por prácticas ilícitas del trabajo *vis a vis* una por deber de justa representación y las consideraciones de política pública, envueltas en ambas, eran relevantes para aplicar por analogía el mismo término prescriptivo. No obstante, nuestra Ley Núm. 130-1945 no cuenta con disposición análoga que nos permita realizar la misma analogía a la realizada por el máximo foro federal.

bajo el Art. 1802 del Código Civil de 1930, 31 LPRA ant. sec. 5141, donde es indispensable que el lesionado pruebe: (1) la existencia de una acción u omisión culposa o negligente; (2) la antijuricidad de esta; (3) la producción de un daño, y (4) la relación causal entre la acción u omisión y el daño causado. *SLG Colón-Rivas v. ELA*, 196 DPR 855, 864 (2016); *Consejo Cond. Plaza del Mar v. Jetter*, 169 DPR 643, 655 (2006).

Además, consideramos que los vínculos obligacionales entre la HEO y los aquí recurridos es análoga a una relación médico-paciente y abogado-cliente. En todos estos casos la relación entre las partes surge de un pacto, ya sea de las cláusulas de un convenio colectivo o un contrato de servicios profesionales, pero las acciones entre estos no tienen que surgir de la obligación pactada previamente. Este Tribunal ha resuelto que procede una reclamación de daños extracontractuales "si el hecho causante del daño constituye una violación del deber general de no causar daño a otro", independientemente de que exista el quebrantamiento de un contrato. *Ramos Lozada v. Orientalist Rattan Furnt., Inc.*, 130 DPR 712, 727-728 (1992).[17] Conforme con lo anterior, las reclamaciones de daños por impericia profesional de los médicos, abogados y notarios son de índole extracontractual y, por ende, se atienden al amparo del Art. 1802 del Código Civil de 1930, *supra*. *Martínez Marrero v. González Droz*, 180 DPR 579, 592 (2011).

---

[17] En tales casos se da la concurrencia de acciones entre la responsabilidad contractual y la responsabilidad aquiliana, quedando en manos del damnificado escoger entre las distintas acciones que tiene disponible, la que mejor ayude a vindicar sus derechos. *Ramos Lozada v. Orientalist Rattan Furnt., Inc.*, *supra*.

En el caso de autos, la HEO tiene un deber de fiducia hacia los recurridos durante las negociaciones del Convenio y ante el Negociado de Arbitraje. Este deber es independiente del Convenio Colectivo, e implícito en la naturaleza de la HEO como el representante exclusivo de todos los empleados en la unidad apropiada. *Véase*, *Emporium Capwell Co. v. Western Addition Community Organization, 420 U.S. 50, 64 (1975).*[18] Sin embargo, en este caso se alegó que la HEO no defendió de buena fe, sin discrimen, ni arbitrariedad, el interés de los recurridos de ser renumerados de manera equitativa. En relación con la negociación que culminó el 13 de diciembre de 2012 con el Convenio Colectivo, se fijaron las escalas salariales disparejas de los aquí recurridos. Para los recurridos, su colocación en las escalas salariales como producto de la negociación resultó en que por años recibieran una remuneración que consideran injusta y por debajo de lo que les corresponde.

Además, el 4 de septiembre de 2013, la HEO presentó una Solicitud para la Designación o Selección de un Árbitro, proceso que permitía proveer un remedió a la situación de los recurridos. En esta la HEO le imputó a la Autoridad haber incumplido con el procedimiento que proveen los Arts. XII y XIII del Convenio Colectivo en la reasignación del puesto de los recurridos. Este proceso finalizó con un Laudo emitido el 17 de octubre de 2016, el cual resolvió que no procedía el reclamo de la HEO. **En esta fecha**

---

[18] En este caso la Corte Suprema de los Estados Unidos resumió que; "we have held, by the very nature of the exclusive bargaining representative's status as representative of all unit employees, Congress implicitly imposed upon it a duty fairly and in good faith to represent the interests of minorities within the unit".

**se produjo el resultado definitivo de la alegada omisión de la HEO al deber de justa representación, ya que del expediente surge que el arbitraje fue la última gestión realizada para adelantar los intereses de los recurridos**. A partir de este punto los recurridos estaban en posición de evaluar la totalidad de los actos de la HEO y juzgar si esta había representado sus intereses de manera leal.

Así las cosas, resolvemos que el término prescriptivo en cuanto a la acción en contra de la HEO comenzó el 17 de octubre de 2016 cuando el Negociado de Arbitraje emitió su Laudo. **Es indudable que la acción contra la HEO no está prescrita**, ya que la Demanda de autos fue presentada el 27 de abril de 2017.

### III

Resuelto lo anterior, debemos determinar si los recurridos estaban impedidos de litigar en el foro judicial su causa de acción en contra de la Autoridad. La peticionaria nos invita a contestar esta interrogante en la afirmativa, ya sea por operación de la Doctrina de Cosa Juzgada o bajo el planteamiento de índole constitucional. Veamos primero si aplica la Doctrina de Cosa Juzgada.

### A.

Como garante del interés público sobre la estabilidad y certeza del derecho, nuestro ordenamiento jurídico reconoce la defensa de cosa juzgada. Esta se define como "lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad". *Parilla v. Rodríguez,* 163 DPR 263, 268 (2004) (citando a J.M. Manresa, *Comentarios al Código Civil Español,* 6ta ed. Rev., Madrid Ed. Reus, 1967, T.VIII, Vol. 2, pág. 278). Esta

doctrina cumple el propósito de "impartir finalidad a los dictámenes judiciales de manera que [e]stos concedan certidumbre y certeza a las partes en el litigio". *P.R. Wire Prod. v. C. Crespo & Assoc.*, 175 DPR 139, 151 (2008).

Conforme con el Art. 1204 del Código Civil de 1930, 31 LPRA ant. sec. 3343, la presunción de cosa juzgada surte efecto cuando concurra la más perfecta identidad de: (1) cosas, (2) causas, (3) las personas de los litigantes y (4) la calidad en que lo fueron. Por tanto, la sentencia emitida en un pleito anterior impide que se litiguen posteriormente, entre las mismas partes y sobre las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, y aquellas que se pudieron haber litigado. *Mun. de San Juan v. Bosque Real S.E.*, 158 DPR 743, 769 (2003). A su vez, este Tribunal ha resuelto que la Doctrina de Cosa Juzgada "no debe aplicarse inflexiblemente, especialmente cuando al hacerlo se desvirtúan los fines de la justicia, produce resultados absurdos o cuando se plantean consideraciones de interés público". *Meléndez v. García*, 158 DPR 77, 92 (2002).

Por otra parte, el impedimento colateral por sentencia constituye una modalidad de cosa juzgada, con la distinción de que no es necesario que se configure la identidad de causas. *Presidential v. Transcaribe*, 186 DPR 263, 274 (2012). Esta se configura cuando: (1) se adjudicó un asunto, (2) en una sentencia previa, (3) luego de haberse litigado, (4) entre las mismas partes y (5) el hecho adjudicado es esencial para un segundo pleito. *Rodríguez Ocasio v. ACAA*, 197 DPR 852, 862-63 (2017) (Sentencia). Por tanto, esta Doctrina tiene el efecto de *impedir* que se litigue

en un pleito posterior un hecho esencial que fue adjudicado mediante Sentencia final en un litigio previo. *P.R. Wire Prod. v. C. Crespo & Assoc.*, *supra*, pág. 152.

**B.**

De otra parte, nuestra jurisdicción favorece el uso del arbitraje como mecanismo para resolver disputas de carácter obrero-patronal. *AAA v. UIA*, 199 DPR 638, 649 (2018). Esto se debe a que el arbitraje, en comparación con el litigio judicial, es menos técnico, más flexible y menos oneroso para resolver las controversias que resultan de la relación contractual entre las partes. *C.O.P.R. v. S.P.U.*, 181 DPR 299, 324 (2011). Mediante este método alterno de solución de disputas, las partes voluntariamente sustituyen a los tribunales por un árbitro que determine todas las cuestiones de hecho y de derecho habidas entre ellas. *Vivoni Farage v. Ortiz Carro*, 179 DPR 990, 1006-07 (2010).

En el ámbito obrero-patronal, la autoridad del árbitro para resolver surge del Acuerdo de Sumisión sometido por las partes[19] y el Convenio Colectivo. *H.I.E.Tel. v. Celulares*, 169 DPR 1, 27 (2006) (Sentencia) (op. de conformidad J. Rodríguez Rodríguez); *López v. Destilería Serrallés*, 90 DPR 245, 256 (1964). "Es decir, las partes quedan libres para delimitar el radio de acción del árbitro, a través de lo que acuerden a esos efectos en el convenio colectivo o en el acuerdo de sumisión". *H.I.E.Tel. v. Celulares*, *supra*. Por

---

[19] Sobre estos acuerdos, D. Fernández Quiñones comenta que "[e]l acuerdo de sumisión que define la controversia o controversias sometidas al árbitro, conjuntamente con el convenio colectivo, le confiere jurisdicción al árbitro. Por, tal razón, el acuerdo de sumisión debe específicamente establecer lo que las partes interesan que el árbitro decida". D. Fernández Quiñones, *op. sic.*, pág. 61.

ello, en el procedimiento de arbitraje, el Acuerdo de Sumisión unido al Convenio establece la ley entre las partes. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 DPR 62, 67 (1987) (Per Curiam); *J.R.T. v. Caribbean Towers, Inc.*, 99 DPR 595, 598 (1971).

No obstante, de ordinario las partes no logran acordar una sumisión y en vez se someten Proyectos de Sumisión por separado, "en cuyo caso el árbitro determina cuál es la controversia para resolver". Pérez Rivera, *Breve Tratado de Derecho Laboral de Puerto Rico*, San Juan, Ed. Situm, 2024, pág. 314. Cuando las partes pactan utilizar los servicios del Negociado de Arbitraje y estas no logran someter una sumisión conjunta para el asunto particular, el árbitro tiene la potestad de elaborar los asuntos precisos a ser resueltos, considerando "el convenio colectivo o acuerdo, las contenciones de las partes y la evidencia admitida". Art. XII(b) del Reglamento para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje del 7 de septiembre de 2016.[20]

De igual forma, la función principal del árbitro es interpretar las cláusulas del Convenio, adhiriéndose a la esencia de este y su decisión final queda plasmada en un Laudo. *C.O.P.R. v. S.P.U.*, *supra*, págs. 327-328. Hemos señalado que un Laudo no es ni un Contrato ni una Sentencia, pero disfruta de la naturaleza de ambos. *Íd*. Hemos reconocido que las determinaciones arbitrales constituyen ley entre las partes y estas gozan de una especial

---

[20] Este Reglamento fue derogado por el *Reglamento para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje*, Reglamento del 10 de noviembre de 2021. No obstante, por ser el vigente al momento de los hechos, hacemos referencia al mismo.

deferencia por parte de los tribunales. [21] *C.O.P.R. v. S.P.U.*, *supra*; *JRT v. Hato Rey Psychiatric Hospital*, *supra*.

Como norma general, las determinaciones del Laudo son "finales e inapelables, por lo que las cuestiones atendidas en el laudo no pueden litigarse ante los tribunales". *Vivoni Farage v. Ortiz Carro*, *supra*, pág. 1007; *J.R.T. v. Otis Elevator Co.*, 105 DPR 195 (1976). Una vez que el Laudo adviene final, en ausencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión de resolver todas las cuestiones en disputa o que el Laudo sea contrario a la política pública, los tribunales debemos abstenernos de reinterpretar el mismo de forma contraria a las palabras claras de la sumisión y el Laudo. *C.O.P.R. v. S.P.U.*, *supra*, pág. 328.

Ahora, la revisión judicial está justificada cuando las partes convienen que la controversia sometida al árbitro sea resuelta conforme a derecho. *Vivoni Farage v. Ortiz Carro*, *supra*. Al pactar lo anterior el árbitro tiene una obligación de seguir las reglas de derecho sustantivo y rendir una decisión conforme con las doctrinas legales prevalecientes, justificando la intervención judicial cuando la decisión arbitral sea contraria a estas normas de derecho sustantivo. *C.O.P.R. v. S.P.U.*, *supra*, pág. 329.

Pasemos entonces a evaluar la aplicabilidad de estas normas al caso de autos.

### C.

---

[21] Además, el comentarista D. Fernández Quiñones señala que, al pactar los procedimientos de quejas, agravios y arbitraje para la solución de disputas, las partes acuerdan que estos son obligatorios y resuelven la controversia de manera final. Lo anterior tiene el fin de impartirle al laudo arbitral características de ser final y firme. D. Fernández Quiñones, *op. sic.*, pág. 465.

La peticionaria argumentó que los recurridos han previamente ventilado la misma controversia ante el Negociado de Arbitraje (Caso Núm. A-14-628) entiéndase, la retribución dispareja de los Auxiliares de Agrimensor en comparación con otros auxiliares. Señaló que el Convenio Colectivo dispone que el Laudo debía ser emitido conforme a derecho, por lo que, la Árbitro estaba obligada a considerar los derechos que surgieran de las leyes y la Constitución. Por lo cual, argumenta que entre ambos procedimientos existe perfecta identidad de causa, cosas y los litigantes por lo que procede la aplicación de la Doctrina de Cosa Juzgada.

Los Laudos de Arbitraje son la ley entre las partes y estos tienen un efecto de *estoppel* por determinación previa. Las cuestiones atendidas no pueden litigarse posteriormente ante los tribunales. Por tanto, la Doctrina de Cosa Juzgada puede ser invocada en un procedimiento judicial, siempre y cuando en el Laudo anterior concurra la más perfecta identidad entre las cosas, causas, las personas de los litigantes y la calidad en que lo fueron. Así las cosas, este análisis debe ser atemperado a la facultad de las partes de limitar las controversias sometidas al árbitro.

Los foros judiciales debemos ejercer especial atención en respetar la voluntad expresamente pactada, según surja del texto del Convenio Colectivo y del Acuerdo de Sumisión. Particularmente, en casos donde el Laudo adviene final y no estamos ante un proceso de revisión de este, los tribunales debemos abstenernos de reinterpretar el mismo de forma contraria a las palabras claras de la Sumisión y el Laudo.

**Luego de realizado este análisis, no podemos concluir que entre el Caso Núm. A-14-628 y el caso de autos concurran los requisitos para que sea aplicable la Doctrina de Cosa Juzgada o de Impedimento Colateral por Sentencia.** No estamos ante dos procedimientos donde se atendió la misma controversia. Un análisis detallado del Laudo revela que la controversia allí era sobre si la Autoridad cumplió con el Convenio Colectivo al reasignar a la escala salarial 8 el puesto Auxiliar de Agrimensor. Mientras en el caso de autos se examina la constitucionalidad del Art. XX y el Exhibit A del Convenio Colectivo que establecen las escalas salariales de la Autoridad.

En primer lugar, el Convenio Colectivo en su Art. XLII expresamente definió las controversias que se podrían someter al Procedimiento de Arbitraje al expresar que:

> El término "controversia" comprende toda queja o querella que envuelva el interés de uno o más trabajadores que surja en cualquier unidad o dependencia de la Autoridad y/o agravio, queja o reclamación relacionada con la interpretación, aplicación, administración, o alegada violación de este Convenio. Las quejas o querellas podrán ser presentadas por la Hermandad o por la Autoridad. Toda queja o querella se tramitará conforme a los mecanismos creados en este Artículo y organismos creados por ley con jurisdicción para ello.[22]

Además, sobre la etapa del arbitraje, las partes expresamente pactaron que "[la] decisión del Árbitro será final e inapelable, seguida y cumplida por las partes siempre que sea conforme a derecho".[23] De lo anterior se puede precisar que las partes pactaron expresamente someter a un proceso de arbitraje, en el cual

---

[22] Apéndice del recurso de apelación, pág. 1481.

[23] *Íd.*, pág. 1482.

resolvería conforme a derecho, los asuntos relacionados con la aplicación y la interpretación del Convenio Colectivo.

El Laudo revela que las partes no lograron acordar en una sumisión sobre la controversia a resolverse, que se sometieron respectivos proyectos individuales y que recayó en la Árbitro determinar la controversia.[24] Así las cosas, la Árbitro determinó que conforme al Convenio Colectivo y la prueba admitida, el asunto a resolverse era:

> Determinar conforme a la prueba presentada y el Convenio Colectivo, si la Autoridad incumplió el procedimiento en la reasignación de puestos de los Querellantes, según los Artículos XII y XIII del Convenio Colectivo o no. De determinar que la Autoridad incumplió, que la Árbitro determine el remedio apropiado.[25]

En síntesis, la Árbitro entendió que la controversia que tenía ante sí era si la Autoridad cumplió con los Arts. XII y XIII del Convenio Colectivo. En otras palabras, la Árbitro adjudicó únicamente si la resignación del puesto de Auxiliar de Agrimensor a la escala retributiva 8 fue realizada conforme al Convenio.

Esta determinación, emitida en el 2016, fue consentida por las partes al acordar en el Convenio Colectivo utilizar los servicios del Negociado de Arbitraje siguiendo las normas de este.[26] Como ya resaltamos, el Reglamento para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje, *supra*, faculta al Árbitro a determinar la controversia a resolver cuando las partes no logran

---

[24] Recalcamos que no estamos ante una revisión judicial del Laudo y no contamos con un expediente detallado sobre los pormenores del proceso arbitral. Solo contamos con el Laudo y los documentos que acompañaron las mociones bajo la Regla 36 de Procedimiento Civil, *supra*.

[25] Apéndice del recurso de apelación, pág. 346.

[26] *Íd.*, pág. 1482.

llegar a un acuerdo sobre sumisión. Además, el Laudo no fue objeto de trámites posteriores por parte de la HEO, la Autoridad o los recurridos y, conforme al Convenio, es final e inapelable. **Así las cosas, consideramos que la determinación de la Árbitro es merecedora de deferencia y que no se nos ha puesto en posición de descartar el lenguaje claro del Laudo en cuanto a la controversia que fue examinada en el arbitraje.**

## IV

Por último, en su primer señalamiento de error, la Autoridad nos invita a ejercer nuestra función como intérpretes de la Constitución de Puerto Rico para juzgar si esta reconoce una causa de acción en contra del patrono bajo el derecho de igual paga por igual trabajo cuando las escalas salariales surgen de un Convenio Colectivo. De responder en la afirmativa, en su último señalamiento de error, la peticionaria arguye que los recurridos no lograron establecer que los puestos que contienen el término de auxiliar son comparables al puesto de Auxiliar de Agrimensor.

### A.

El derecho de los obreros puertorriqueños a la negociación colectiva inició con la aprobación de la Ley Núm. 130-1945, *supra*. Esta establece como política pública el fomento de la negociación colectiva como mecanismo para alcanzar: (1) el máximo desarrollo de la producción de nuestro país, a fin de establecer los niveles más altos de vida posibles; (2) el crecimiento de los salarios; (3) el mejoramiento de las condiciones de empleo adecuados para los obreros puertorriqueños; (4) la consecución de la paz industrial, y (5) la producción ininterrumpida de artículos y servicios. Art. 1, Ley

Núm. 130-1945, 29 LPRA sec. 62; *DACo v. AFSCME*, 185 DPR 1, 16 (2012); *C.O.P.R. v. S.P.U.*, *supra*, pág. 312. Además, la Ley Núm. 130-1945, *supra*, extendió este derecho a los trabajadores de las agencias corporativas del Gobierno que se dediquen o puedan dedicarse en el futuro a negocios lucrativos o a actividades con un beneficio pecuniario. *DACo v. AFSCME*, *supra*, pág. 17; *Depto. Estado v. U.G.T.*, 173 DPR 93, 107 (2008).

Al aprobarse la Constitución de Puerto Rico, este derecho de todo empleado del sector privado y de ciertas agencias gubernamentales quedó consagrado expresamente en la Sec. 17 de la Carta de Derechos que dispone:

> [l]os trabajadores de empresas, negocios y patronos privados y de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados tendrán el derecho a organizarse y a negociar colectivamente con sus patronos por mediación de representantes de su propia y libre selección para promover su bienestar. Art. II, Sec. 17, Const. P.R., LPRA, Tomo 1.

Lo anterior, en conjunto al derecho a la huelga,[27] consagra una política constitucional de disuadir "las huelgas y disensiones en las relaciones obrero-patronales" y de "facilitar esas relaciones dentro de un clima de respeto mutuo y reconocimiento recíproco de su esencial interdependencia productiva". Informe de la Comisión de la Carta de Derechos de la Convención Constituyente presentado el 14 de diciembre de 1951, 4 Diario de Sesiones de la Convención Constituyente de Puerto Rico, 2575 (1961). Esto se logra proveyendo "al trabajador de medios de organización de gran importancia en el planteamiento y la validación de sus reclamaciones". *Íd*. Siendo

---

[27] Véase Art. II, Sec. 18, Const. P.R., LPRA, Tomo 1.

así, el desiderátum de esta política es "la armonía, la cooperación, la más abundante producción como resultado de la justicia social". *Íd.*

El rango constitucional de este derecho implica que este y las leyes sobre relaciones del trabajo, se deben interpretar de forma liberal, a favor de las protecciones y el fomento de este derecho. *A.A.A. v. Unión Abo. A.A.A.*, 158 DPR 273, 284 (2002); *J.R.T. v. Asoc. C. Playa Azul I*, 117 DPR 20, 33 (1986). Lo anterior se hace "teniendo siempre presente que estas leyes son parte de un esquema amplio y abarcador encaminado a implantar la directriz constitucional". *J.R.T. v. Asoc. C. Playa Azul I*, *supra*. No obstante, este derecho no es absoluto y nuestro ejercicio interpretativo debe darse "dentro del cuadro general de la sociedad con arreglo a las limitaciones inherentes a la vida común". *A.A.A. v. Unión Abo. A.A.A.*, *supra* (citando a *S.I.U. de P.R. v. Otis Elevator Co.*, *supra*, pág. 842).

En términos generales, la negociación colectiva provee una manera eficaz y práctica para la contratación entre el trabajador y el patrono. Este provee al empleado un instrumento que equipara las fuerzas y responsabilidades entre las partes, ya que por sí solo el trabajador no está en posición de discutir de igual a igual con su patrono las condiciones de su empleo. Al ejercer este derecho los trabajadores pueden negociar con su patrono como pares sin mayores trabas que el propio acto de la negociación. *C.O.P.R. v. S.P.U.*, *supra*, pág. 318. Véase, Diario de Sesiones de la Convención Constituyente de Puerto Rico, *op. sic.*, pág. 2574.

Cuando se logra elaborar un Convenio Colectivo estamos ante el escenario ideal donde en "el proceso de negociación colectiva resulta en la confluencia de voluntades de las uniones, los empleados individuales y los patronos". *AAA v. UIA*, *supra*, pág. 648. El Convenio Colectivo es "el acuerdo por escrito entre una organización obrera y un patrono en que se especifican los términos y las condiciones de empleo para los trabajadores cubiertos por el contrato, el estatus de la organización obrera y el procedimiento para resolver las disputas que surjan durante la vigencia del contrato". C.*O.P.R. v. S.P.U.*, *supra*, pág. 319.

El Convenio es un contrato y vincula por igual al patrono, a la Unión y a los miembros individuales, estando estos obligados a cumplir rigurosamente con lo que ahí estipularon. *AAA v. UIA*, *supra*, pág. 650; *San Juan Mercantile Corp. v. J.R.T.*, 104 DPR 86, 89 (1975); *Pérez v. Autoridad de Fuentes Fluviales*, 87 DPR 118, 123-24 (1963). Lo anterior "fomenta un mayor sentido de responsabilidad en las partes contratantes, lo que a su vez propicia la paz industrial". *Rivera Adorno v. Autoridad de Tierras*, 83 DPR 258, 265 (1961). De igual forma, las partes no pueden pretender beneficiarse de unas cláusulas del convenio y rechazar otras. *Íd.*, pág. 264.

Así las cosas, los Convenios Colectivos tienen fuerza de ley entre las partes, siempre y cuando, su contenido no contravenga las leyes, la moral y el orden público. *Cardona Caraballo v. ACT*, 196 DPR 1004, 1013 (2016); *J.R.T. v. Junta Adm. Muelles Mun. de Ponce*, 122 DPR 318, 333 (1988). El Convenio Colectivo "[c]on la limitación mencionada, es la ley de la industria o factoría concernida". *Pérez v. Autoridad de Fuentes Fluviales*, *supra*, pág. 122. Por último,

dado a que estos promueven la paz y la estabilidad en las relaciones obrero-patronal, la validez y eficacia de estos acuerdos deben ser "siempre objeto del más entusiasta endoso por parte de los tribunales". *J.R.T. v. Junta Adm. Muelles Mun. de Ponce*, *supra*.

**B.**

Entre los derechos de los trabajadores que consagra la Sec. 16 del Art. II de la Constitución de Puerto Rico se reconoce expresamente el principio de igual paga por igual trabajo. Art. II, Sec. 16, Const. P.R., LPRA, Tomo 1. Este derecho se enmarca en la política pública que pretende brindar a los trabajadores del servicio público un tratamiento equitativo y justo en la fijación de sus sueldos y demás formas de retribución. *Rivera Padilla v. OAT*, 189 DPR 315, 355 (2013).

Sobre este principio, en *Mercado Vega v. U.P.R.*, 128 DPR 273, 284 (1991), recalcamos que la principal inspiración de este mandato "fue la realidad imperante en la época de su adopción cuando a las mujeres con frecuencia se les pagaba menos, aunque rindieran la misma o mayor labor que el hombre". Véase, además, Diario de Sesiones, *op. sic.*, pág. 2574. Además, advertimos que dicho principio "debía entenderse en su contexto histórico". *Mercado Vega v. U.P.R.*, *supra*, pág. 285. "De tal manera, reconocimos el interés de los padres de la Constitución de Puerto Rico por equiparar la paga que reciben las mujeres en comparación con los hombres, cuando ambos realizan labores que son iguales en su naturaleza". *Rivera Padilla v. OAT*, *supra*, pág. 355.

Ahora bien, esta no es la única motivación de esta garantía. La Cláusula Constitucional de Igual Paga por Igual Trabajo también

"interesa evitar discrímenes de una parte e irritaciones de otra, producidas cuando la compensación diferente *carece de justificación* frente a la igualdad de la labor rendida". Diario de Sesiones, *op. sic.* Además, hemos reconocido que los principios de equidad y justicia en la fijación de los salarios de los empleados públicos constituyen una aplicación práctica del derecho constitucional a recibir igual paga por igual trabajo. *Rivera Padilla v. OAT*, *supra.*

Este principio no es absoluto y no impide un salario distinto entre personas que realizan igual trabajo. Véase, Diario de Sesiones de la Convención Constituyente, *op. sic.*, pág. 2574. Factores diferenciadores, como los años de servicios prestados y las diferentes cualidades del personal, merecen retribuirse de distinta manera, a través de la creación de "distintas escalas y distintos tipos dentro de las escalas para dar a cada cual lo que cada cual merece y ha ganado". *Aulet Lebrón v. Depto. Servicios Sociales*, 129 DPR 1, 46 (1991). Estos factores permiten que la autoridad nominadora establezca, dentro de las clases, "una clasificación justificada ante la labor rendida". *Íd.* Por lo tanto, en *Rivera Padilla v. OAT*, *supra*, pág. 357, afirmamos que el principio de igual paga por igual trabajo "no es óbice para la otorgación de salarios distintos a personas clasificadas en la misma escala salarial, siempre y cuando exista *una justificación objetiva* para la diferencia de compensación ante la igualdad de la labor rendida".

**C**

En su Sentencia, el Tribunal de Apelaciones concluyó que los recurridos contaban con una causa de acción en contra de la

Autoridad aun cuando las escalas salariales impugnadas surgían de un Convenio Colectivo. Fundamentó su postura en la política pública a favor de los trabajadores de tratamiento equitativo y justo en la fijación de los salarios de los empleados públicos como aplicación práctica del derecho constitucional a recibir igual paga por igual trabajo. Por lo cual, entendió que el derecho de igual paga por igual trabajo podía ser invocado.

La Autoridad sostiene que el Tribunal de Apelaciones erró en su proceder, señalando que el tipo de acción contemplada por el foro intermedio lacera la utilidad de los Convenios Colectivos como mecanismo para lograr la paz industrial. Además, plantea que, con su proceder, el tribunal viabiliza que miembros individuales de la Unión Sindical puedan litigar judicialmente asuntos negociados en el Convenio Colectivo.

Luego de evaluar los argumentos de las partes y el derecho anteriormente reseñado, concluimos que el Tribunal de Apelaciones cometió el error imputado. Lo resuelto por el foro apelativo intermedio no representa el balance de intereses idóneo entre ambas Cláusulas Constitucionales. Siendo ello así, los recurridos no podían invocar el derecho de igual paga por igual trabajo para sustentar su impugnación de las escalas salariales de la Autoridad que surgían del Convenio Colectivo. Veamos por qué.

Como ya reseñamos, la negociación colectiva es un remedio eficaz y práctico para la contratación entre el trabajador y el patrono, en donde las fuerzas económicas entre ambos quedan equiparadas y las partes pueden discutir de igual a igual las condiciones de empleo. Además, las leyes de relaciones obrero-

patronales forman parte de un esquema legislativo amplio y abarcador dirigido a implantar la política constitucional de que las relaciones obrero-patronales se den en un marco de respeto y reconocimiento recíproco. Este proceso necesariamente implica un toma y daca que requiere que las partes calibren sus expectativas y los reclamos que levantan en la mesa de negociación. El resultado de este proceso, que indudablemente requiere realizar concesiones para recibir beneficios, resulta en un Convenio que agrupa la voluntad colectiva de las partes y vincula por igual al patrono, a la Unión y a los miembros individuales y, considerado en su totalidad, es aceptable para todos.

Por otro lado, la Ley Núm. 130-1945, *supra*, establece un esquema legislativo que viabiliza y fomenta la negociación efectiva entre ambas partes y mediante el cual la Unión cuenta con las herramientas para negociar en igualdad de condiciones con el patrono. Véase en particular los Arts. 4, 7-9 y 11 de la Ley Núm. 130-1945, 29 LPRA secs. 65, 68-70 y 72. Tal esquema provee a la Unión el poder suficiente para velar por los intereses de sus miembros, lo que necesariamente implica velar por el respeto de los derechos de estos trabajadores.

Dentro de este esquema, resulta entonces impermisible que las partes de un Convenio Colectivo puedan escoger beneficiarse de Cláusulas que resultan convenientes y repudiar otras. Además, no se puede pretender negociar colectiva e individualmente a la vez. *Rivera Adorno v. Autoridad de Tierras*, *supra*, pág. 264. Por tanto, no podemos avalar que miembros individuales puedan recurrir, irrestrictamente, al foro judicial con el fin de impugnar los

asuntos pactados y ratificados por la mayoría de la matrícula sindical.

Resolver lo contrario equivaldría a proveer oportunidad de negociar de manera individual con el patrono, bajo auspicios del tribunal. El meramente invocar el derecho constitucional a igual paga por igual trabajo no constituye fundamento suficiente para socavar el hecho de que se ejerció el derecho a la negociación colectiva para pactar las condiciones de empleo. Por tanto, no podemos avalar una interpretación mediante la cual los recurridos invocan una Cláusula Constitucional y pretenden que la otra no existe cuando no les beneficia. Sustentar una causa de acción bajo este principio para miembros individuales minaría el poder de negociación de las uniones, ya que esta no podrá garantizar al patrono que la negociación colectiva resultaría en la paz industrial. Además, forzaría a los sindicatos a tener que optar por asumir ciegamente todos los reclamos de sus miembros individuales, impidiendo el clima de respeto y confianza mutua necesaria para lograr una negociación efectiva.

Tampoco estamos ante un caso donde la disparidad salarial constituye un discrimen contra una categoría protegida, a tenor con la Constitución. Además, no podemos perder de perspectiva que los recurridos cuentan con la reclamación en contra de la HEO, bajo el deber de justa representación, la cual, por haberse presentado de manera oportuna, constituye un remedio adecuado que no vulnera el delicado balance que hoy preservamos con la decisión que emitimos.

**V.**

En consideración a los fundamentos discutidos, se modifica la Sentencia emitida por el Tribunal de Apelaciones. Se ordena la desestimación sumaria de la presente reclamación en contra de la Autoridad de los Puertos de Puerto Rico y la continuación de los procedimientos en cuanto a la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas conforme con lo expresado en esta Opinión.

Se dictará Sentencia de conformidad.


                        Mildred G. Pabón Charneco
                        Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Felipe Landrau Cabezudo y otros<br><br>    Recurridos<br><br>        v.<br><br>Autoridad de los Puertos de Puerto Rico y otros<br><br>    Peticionarios | | AC-2024-0002 |

SENTENCIA

En San Juan, Puerto Rico, a 15 de enero de 2025.

Por los fundamentos expuestos en la Opinión que antecede, se modifica la Sentencia emitida por el Tribunal de Apelaciones. Se ordena la desestimación sumaria de la presente reclamación en contra de la Autoridad de los Puertos de Puerto Rico y la continuación de los procedimientos en cuanto a la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas conforme con lo expresado en esta Opinión.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez disiente con Opinión escrita. La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez disienten sin Opinión escrita.


                        Javier O. Sepúlveda Rodríguez
                        Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Felipe Landrau Cabezudo y otros<br><br>Recurridos<br><br>v.<br><br>Autoridad de los Puertos de Puerto Rico y otros<br><br>Peticionarios | AC-2024-0002 | |

Opinión disidente emitida por el Juez Asociado Señor Estrella Martínez

En San Juan, Puerto Rico, a 15 de enero de 2025.

Hoy tuvimos la oportunidad de salvaguardar el derecho de las empleadas y los empleados unionados de acudir a los tribunales de Puerto Rico para hacer valer el principio constitucional de recibir igual paga por igual trabajo, establecido en la Sección 16 del Artículo II de la Constitución de Puerto Rico, infra. Asimismo, este caso representaba el escenario ideal para pautar plenamente el alcance de este principio constitucional.

Sin embargo, una Mayoría de este Tribunal determinó que una empleada o un empleado sindicalizado no puede presentar una reclamación judicial en contra de su patrono para impugnar las escalas salariales acordadas en un convenio colectivo al que está suscrito o suscrita, al amparo del principio constitucional de igual paga por igual

trabajo. Lo anterior, por considerar que se trastocaría el derecho a la negociación colectiva.

En este contexto, este Tribunal reconoce que el único remedio judicial para las empleadas y los empleados unionados que alegan una violación de su derecho constitucional a recibir igual paga por igual trabajo es demandar a la unión sindical a la cual pertenecen mediante una causa de acción sobre justa representación, por esta haberse desempeñado de manera dolosa en la negociación colectiva. Con esta decisión, los recurridos quedaron sin acceso a un foro judicial para resolver la controversia sobre el principio de igual paga por igual trabajo, al erróneamente determinarse que la reclamación en contra de su empleador interfiere con la política pública de la negociación colectiva.

Como consecuencia de lo anterior, los recurridos solo podrán exigir compensación al sindicato si logran demostrar que este incumplió con su deber de representación justa al negociar disposiciones que infringen derechos constitucionales. Esto implica que no podrán reclamar compensación alguna a su patrono, ya que, tras esta decisión, no se reconoce una causa de acción que permita a las empleadas y los empleados sindicalizados impugnar las escalas salariales acordadas en un convenio colectivo al que están suscritos bajo el principio de recibir igual paga por igual trabajo.

Por no estar de acuerdo con lo aquí pautado, respetuosamente disiento.

## I

Como trasfondo al asunto que nos ocupa, los señores Felipe Landrau Cabezudo y José Alberto Santiago (recurridos) son empleados de la Autoridad de los Puertos de Puerto Rico (Autoridad o parte peticionaria) y ambos ocupan el cargo de Auxiliar de Agrimensor. Los empleados de la Autoridad están organizados en dos (2) unidades de negociación colectiva, a saber: (1) la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas (HEO), y (2) la Unión de Empleados de Muelles (Unión de Muelles). Cabe mencionar que, el puesto de Auxiliar de Agrimensor pertenece a la unidad apropiada de la HEO.[1]

El 27 de abril de 2017, los recurridos presentaron una demanda sobre impugnación de escalas salariales titulada <u>Queja</u> ante el Tribunal de Primera Instancia. En esencia, alegaron que el puesto de Auxiliar de Agrimensor, que actualmente forma parte del Convenio colectivo al que se encuentran suscritos, está clasificado en una escala

---

[1] Como parte de sus funciones, la HEO llevó a cabo diversas negociaciones con la Autoridad, lo que resultó en la creación de varios convenios colectivos. En particular, se acordaron los siguientes: (1) el Convenio colectivo vigente del 1 de octubre de 1993 al 30 de septiembre de 1996; (2) el Convenio colectivo vigente del 1 de octubre de 1996 al 30 de septiembre de 2000; (3) el Convenio colectivo vigente del 1 de octubre de 2000 al 30 de septiembre de 2007; y (4) el Convenio colectivo vigente del 1 de octubre de 2012 al 30 de septiembre de 2016. Apéndice de la parte peticionaria, págs. 1019-1118. Cabe señalar que los recurridos están suscritos a este último Convenio colectivo.

salarial inferior a la de otros puestos que llevan el término "Auxiliar" en sus títulos, a pesar de que dicho cargo requiere mayor preparación académica y conlleva igual o mayor carga laboral. Según plantearon los recurridos, esto contraviene la disposición de "igual paga por igual trabajo" establecida en la Constitución de Puerto Rico, infra. Por lo tanto, adujeron que la Autoridad actuó de manera negligente al no corregir esta disparidad salarial en su Plan de Retribución. Asimismo, expusieron que la HEO incumplió su deber de "justa representación" al negociar los Convenios colectivos sin procurar la revisión de dicho plan. Por ello, solicitaron la equiparación salarial de su puesto y el pago de los salarios no recibidos durante el tiempo en que estuvieron en una escala salarial inferior.

Tras varias incidencias procesales, el 4 de noviembre de 2022, la Autoridad presentó una Solicitud de sentencia sumaria. Posteriormente, el 10 de noviembre de 2022, la HEO presentó una moción para unirse a dicha solicitud.[2] En esta petición, la Autoridad señaló que aplicaba la doctrina de cosa juzgada o impedimento colateral por sentencia debido a la existencia de un procedimiento de arbitraje celebrado ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos (Negociado), en

---

[2] La misma fue titulada Moción uniéndonos a la solicitud de sentencia sumaria y solicitud de conversión de vista, ambas presentadas por la co-demandada Autoridad de los Puertos.

el cual participaron todas las partes del caso de epígrafe.[3] Según la Autoridad, este proceso culminó con un <u>Laudo arbitral</u> que desestimó una querella presentada por la HEO en representación de las empleadas y los empleados que ocupaban el puesto de Auxiliar de Agrimensor, lo que impedía el procedimiento judicial. En aquel entonces, esta querella fue presentada por la HEO al considerar que los empleados que ocupaban el puesto de Auxiliar de Agrimensor debían estar en una escala salarial superior.

Asimismo, la Autoridad arguyó que las reclamaciones de igual paga por igual trabajo y de negligencia por no corregirse la aludida disparidad salarial, eran extracontractuales, por lo que correspondía aplicar el término prescriptivo de un (1) año, según el Artículo 1868 del Código Civil de 1930, 31 LPRA ant. sec. 5298. De acuerdo con la Autoridad, dicho término comenzó a transcurrir el 13 de diciembre de 2012, fecha en que se firmó el último Convenio colectivo con la HEO, por lo que la acción de los recurridos estaba prescrita.

De otra parte, la Autoridad argumentó que los recurridos no podían acudir a la vía judicial para presentar su reclamo, ya que, al haber aceptado los acuerdos establecidos en los Convenios colectivos a través de la HEO, quedaron sujetos a dichos acuerdos. En específico, destacó que el alto interés público en estos acuerdos y sus

---

[3] En específico, la Autoridad hace referencia al caso arbitral núm. A-14-628.

efectos vinculantes impedían que miembros individuales de la HEO, beneficiarios de la negociación colectiva, impugnaran lo ya acordado y aceptado por ellos. Añadió que, si los recurridos no estaban conformes con la negociación, la única alternativa disponible era presentar una acción contra su representante sindical bajo la doctrina de "justa representación".

En oposición, el 7 de noviembre de 2022, los recurridos argumentaron que la doctrina de cosa juzgada no era aplicable, dado que no existía un laudo donde se adjudicara la constitucionalidad de las escalas salariales de la Autoridad. Afirmaron que el Laudo arbitral emitido el 7 de octubre de 2016 solo abordó el asunto relacionado con la reasignación de los puestos laborales. De hecho, alegaron que la HEO no planteó la inconstitucionalidad del Convenio colectivo al que estaban suscritos ni de las escalas salariales ante el Negociado.

Asimismo, los recurridos sostuvieron que la reclamación no estaba prescrita, ya que el Convenio colectivo, que había expirado el 30 de septiembre de 2016, se renovaba automáticamente cada día debido a una cláusula de renovación automática incluida en él. Por otro lado, señalaron que el plazo trienal debía aplicarse a las reclamaciones salariales de los empleados públicos. En la alternativa, argumentaron que correspondía aplicar la doctrina de daños continuos, según lo establecido en Rivera Prudencio v. Mun. de San Juan, 170 DPR 149 (2007), o la

doctrina de violación continua, como se discutió en los casos J.R.T. v. A.E.E., 113 DPR 564 (1982), y U.G.T. v. Corp. Difusión Pub., 186 DPR 674 (2006).

Por último, afirmaron que los empleados tienen la facultad de acudir a los tribunales para impugnar los acuerdos plasmados en un convenio colectivo al que están suscritos cuando este es de carácter discriminatorio. Señalaron que de la prueba surgía que los Auxiliares de Agrimensor reciben un salario inferior a otros auxiliares, aun cuando están en una escala de clasificación superior y cuando se les exige mayor preparación académica y experiencia profesional. Afirmaron que la Autoridad y la HEO no lograron explicar la razón por la cual otros puestos que requieren menos esfuerzo y experiencia laboral reciben una compensación superior.

El 23 de mayo de 2023, el Tribunal de Primera Instancia emitió una Resolución en la que declaró no ha lugar la solicitud de sentencia sumaria por existir hechos materiales en controversia. Por otra parte, concluyó que no se configuró la doctrina de cosa juzgada al no existir identidad de cosas y causas entre el caso de autos y el procedimiento arbitral. A su vez, determinó que los recurridos podían impugnar el Convenio colectivo al que estaban suscritos bajo la doctrina de justa representación. Resolvió que era necesario determinar si las escalas de retribución discriminaban arbitrariamente en contra de los recurridos para estar en posición de entrar en los méritos

sobre el asunto de prescripción y el reclamo de igual paga por igual trabajo.

Inconforme, la parte peticionaria presentó una <u>Moción de reconsideración y solicitud de determinaciones de hechos adicionales</u>. Sin embargo, la misma fue denegada el 20 de junio de 2023.

Aún insatisfecha, el 18 de julio de 2023, la Autoridad presentó un recurso de <u>certiorari</u> ante el Tribunal de Apelaciones. En esencia, reiteró lo argumentado en su <u>Solicitud de sentencia sumaria</u> y en su <u>Moción de reconsideración y solicitud de determinaciones de hechos adicionales</u>.

El 31 de octubre de 2023, el foro apelativo intermedio notificó una <u>Sentencia</u> mediante la cual confirmó el dictamen. Determinó que no aplicaba la doctrina de cosa juzgada o de impedimento colateral por sentencia debido a que el foro arbitral atendió una controversia distinta a la presentada ante los tribunales. Además, concluyó que las doctrinas eran inaplicables porque, según el Convenio colectivo, la Árbitro designada no podía atender controversias de índole constitucional.

Por otro lado, determinó que la demanda no estaba prescrita. En particular, dispuso que, conforme a lo resuelto en <u>J.R.T. v A.E.E.</u>, supra, las reclamaciones por salarios dejados de percibir eran de carácter continuo. Además, entendió que, siendo los recurridos empleados públicos, los términos prescriptivos no podían transcurrir

por haberse presentado la demanda mientras estos estaban empleados.

Por último, concurrió con el foro primario en que no se podía adjudicar la reclamación de igual paga por igual trabajo por existir hechos materiales en controversia. Sin embargo, resolvió que los recurridos podían invocar la cláusula constitucional de recibir igual paga por igual trabajo para cuestionar la disparidad salarial.

Aun inconforme con lo resuelto, y tras presentar una solicitud de reconsideración que fue denegada, la Autoridad recurrió ante nosotros mediante un recurso de Apelación,[4] en el que señaló la comisión de los errores siguientes:

> Erró el Tribunal de Apelaciones al reconocer una causa de acción promovida por empleados unionados particulares en contra de su propia unión y patrono, bajo la doctrina de igual paga por igual trabajo, cuando las escalas impugnadas son el resultado de la negociación colectiva y surgen de un convenio válido.
>
> Erró el Tribunal de Apelaciones, como cuestión de derecho, al rechazar desestimar la demanda y no aplicar la doctrina de cosa juzgada o impedimento colateral por sentencia.
>
> Erró el Tribunal de Apelaciones, como cuestión de derecho, al dejar en suspenso una determinación sobre prescripción cuando existe un impedimento para ejercer autoridad para entender en el presente caso.
>
> Erró el Tribunal de Apelaciones, como cuestión de derecho, al no desestimar la causa de acción, a pesar de que el reclamo sobre igual paga por igual trabajo resulta ser inmeritorio ya que la parte apelada no ha establecido que el puesto de auxiliar de agrimensor lleva a cabo tareas y funciones de igual naturaleza que los otros puestos de auxiliares con quienes se pretende comparar.

---

[4] El 21 de marzo de 2024, este Tribunal acogió el recurso de Apelación como un certiorari por ser el recurso apropiado.

En vista de lo anterior, y en relación con la controversia medular de este caso, la Mayoría de los miembros de este Tribunal determinó que, en aras de proteger la política pública que respalda la negociación colectiva, invocar el principio constitucional de igual paga por igual trabajo no resulta suficiente para limitar el ejercicio legítimo del derecho a la negociación colectiva. Sin embargo, reconoce que la unión sindical, debido a su papel fundamental en la negociación y a su deber fiduciario hacia sus representados y representadas, puede ser demandada en los foros judiciales mediante una causa de acción por incumplimiento del deber de justa representación, si se demuestra que actuó de manera dolosa durante la negociación.

Al no estar de acuerdo con lo resuelto, disiento, no sin antes exponer el marco jurídico en el que fundamento mi postura.

**II**

**A**

La Constitución de Puerto Rico, en su Artículo II, Sección 16, LPRA, Tomo 1, reconoce los derechos básicos de las personas trabajadoras, incluyendo el derecho a recibir igual paga por igual trabajo.[5] Al establecer esta sección,

---

[5] La Constitución de Puerto Rico, en su Artículo II, Sección 16, LPRA, Tomo 1, establece de manera expresa lo siguiente: "[s]e reconoce el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella, **a recibir igual paga por igual trabajo**, a un salario mínimo razonable, a protección contra riesgos para su salud o integridad personal en su trabajo o empleo, y a una jornada ordinaria que no exceda de ocho horas de trabajo. Sólo podrá trabajarse en exceso de este límite diario, mediante

la Convención Constituyente tuvo el propósito de conceder una protección social específica dentro de las relaciones obrero-patronales en Puerto Rico. <u>Mercado Vega v. U.P.R.</u>, 128 DPR 273, 284 (1991). En ese sentido, en esencia, esta disposición evita que un patrono discrimine en términos de la remuneración por cualquier clasificación injustificada frente a la igualdad de la labor rendida. Véase, J.M. Farinacci Fernós, <u>Igual trato por igual trabajo: las clasificaciones laborales irracionales y el trato desigual en el empleo privado</u>, 50 Rev. Jur. UIPR 311, 312 (2015); <u>Mercado Vega v. U.P.R.</u>, supra, pág. 284 (citando a Diario de Secciones de la Convención Constituyente, Tomo 4, pág. 2574 (1961)).

Al expresarnos acerca de este derecho constitucional en <u>Mercado Vega v. U.P.R.</u>, supra, págs. 284-285, expusimos que la principal inspiración de la Convención Constituyente al adoptar "este mandato de justicia obrera fue la realidad imperante en la época de su adopción cuando a las mujeres con frecuencia se les pagaba menos aunque rindieran la misma o mayor labor que el hombre". Además, advertimos que dicho principio debía entenderse en su contexto histórico. Íd., pág. 285. De esa manera, reconocimos el interés por equiparar la paga que reciben las mujeres en comparación con los hombres, cuando ambos grupos de personas realizan

---

compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley." (Negrillas suplidas). Art. II, Sec. 16, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 388.

labores que son iguales en su naturaleza. Rivera Padilla et al. v. OAT, 189 DPR 315, 355 (2013).

Sin embargo, la justicia salarial para las mujeres trabajadoras no constituye la única razón que sustenta la garantía constitucional de recibir igual remuneración por igual trabajo. En este contexto, hemos identificado una segunda manifestación de este derecho. Específicamente, en decisiones previas, al analizar reclamos relacionados con los planes de clasificación y retribución en diversas ramas del gobierno, hemos destacado que los principios de equidad y justicia en la fijación de los salarios para las empleadas y los empleados públicos, recogidos en los reglamentos y leyes de personal de las entidades gubernamentales, no solo reflejan una política pública derivada, sino que también representan una aplicación práctica del derecho constitucional de igual paga por igual trabajo. Acevedo y otros v. Depto. Hacienda y otros, 212 DPR 335, 352-353 (2023); Rivera Padilla et al. v. OAT, supra, pág. 355.

Por ende, esta garantía de rango constitucional no solo prohíbe la práctica de pagar salarios inferiores a las mujeres que rinden trabajos de igual naturaleza que los realizados por los hombres, sino que también protege a cualquier persona trabajadora —indistintamente de su género— que reciba un salario menor en comparación con los salarios obtenidos por sus pares, siempre que desempeñen tareas y funciones equivalentes y no exista un criterio

objetivo que justifique tal disparidad. Rivera Padilla et al. v. OAT, supra, pág. 357.

De acuerdo con lo anterior, puede constatarse que en Puerto Rico existe una clara política pública orientada a garantizar un tratamiento equitativo y justo para las personas trabajadoras en la fijación de sus salarios y demás formas de retribución. Nigaglioni v. Depto. de Salud, 149 DPR 180, 190 (1999); Guzmán v. Depto. de Hacienda, 147 DPR 46, 52-53 (1998).

Es propicio aclarar que este principio no excluye la posibilidad de otorgar salarios distintos a personas clasificadas dentro de una misma escala salarial, siempre que exista una justificación objetiva que explique la diferencia en la compensación, aun cuando las labores realizadas sean similares. Rivera Padilla et al. v. OAT, supra, pág. 357. Esta justificación puede fundamentarse en factores como los años de servicio de la empleada o del empleado; la oferta y demanda en el mercado laboral; las habilidades y destrezas requeridas para realizar el trabajo; y el nivel de complejidad de las tareas desempeñadas, entre otros supuestos. Íd., págs. 355-357; Mercado Vega v. U.P.R., supra, pág. 284.

Por último, es relevante subrayar que esta garantía constitucional también tiene como principal objetivo proteger a las trabajadoras y los trabajadores del sector privado. Lo anterior, debido a que el lenguaje de esta disposición es claro y contundente en tanto se dirige a

"todo trabajador". Véase, J.M. Farinacci Fernós, Igual trato por igual trabajo: las clasificaciones laborales irracionales y el trato desigual en el empleo privado, supra, pág. 318. Por ello, hemos sostenido que la estructura del texto, la cual no establece excepciones, junto con la ausencia de cualificaciones por parte de la Convención Constituyente, exige concluir que la Sección 16 de la Constitución de Puerto Rico aplica por igual a las personas trabajadoras del sector privado como a las del sector público. Municipio de Guaynabo v. Tribunal Superior, 97 DPR 545, 549-550 (1969).

**B**

Antes de la promulgación de la Constitución de Puerto Rico, el derecho a la negociación colectiva de las personas trabajadoras puertorriqueñas fue reconocido mediante la aprobación de la Ley Núm. 130 de 8 de mayo de 1945, según enmendada, también conocida como Ley de Relaciones del Trabajo de Puerto Rico (Ley Núm. 130-1945), 29 LPRA sec. 61 et seq. A tales efectos, esta ley marcó el inicio del desarrollo de la normativa que regula las relaciones obrero-patronales en Puerto Rico. Según lo dispuesto en el Artículo 1, la Ley Núm. 130-1945, supra, 29 LPRA sec. 62, establece como política pública fomentar la negociación colectiva para impulsar el desarrollo de la producción nacional, mejorar los salarios y condiciones laborales, promover la paz industrial, y asegurar la continuidad en la producción de bienes y servicios. Véase, además, AAA v. UIA, 199 DPR

638, 647-648 (2018); DACo v. AFSCME, 185 DPR 1, 16 (2012); C.O.P.R. v. S.P.U., 181 DPR 299, 312 (2011).

Más tarde, la Convención Constituyente elevó a rango constitucional el derecho de las personas trabajadoras a mejorar sus condiciones laborales a través de la negociación colectiva. AAA v. UIA, supra, pág. 647. Este derecho quedó expresamente consagrado en la Constitución de Puerto Rico en su Artículo II, Sección 17, LPRA, Tomo 1. En términos precisos, dicho artículo dispone que las trabajadoras y los trabajadores de empresas o negocios privados, así como de agencias o instrumentalidades gubernamentales que operen como empresas o negocios privados, tienen el derecho a organizarse y a negociar colectivamente con sus empleadores, a través de representantes de su libre elección, con el objetivo de promover su bienestar laboral. Art. II, Sec. 17, Const. PR., LPRA, Tomo 1, pág. 394.

El carácter constitucional de este derecho implica que tanto este como las leyes relacionadas con las relaciones laborales deben interpretarse de forma liberal, es decir, favoreciendo su protección y fomento. A.A.A. v. Unión Abo. A.A.A., 158 DPR 273, 284 (2002); J.R.T. v. Asoc. C. Playa Azul I, 117 DPR 20, 33 (1986). En este contexto, es fundamental considerar que estas leyes forman parte de un esquema abarcador que está orientado a implementar la directriz constitucional previamente mencionada. J.R.T. v. Asoc. C. Playa Azul I, supra, pág. 33. Sin embargo, **esta interpretación "no puede darse en plena abstracción de los**

**demás derechos e intereses involucrados, sino que tiene que darse en función de todos ellos"**. (Negrillas suplidas). S.I.U. de P.R. v. Otis Elevator Co., 105 DPR 832, 842 (1977). Así, hemos señalado que este ejercicio interpretativo debe realizarse "dentro del cuadro general de la sociedad con arreglo a las limitaciones inherentes a la vida común". Íd.

**C**

Conviene señalar que, durante el ejercicio del derecho constitucional de la negociación colectiva, las partes logran alcanzar un acuerdo que ha sido históricamente reconocido como un convenio colectivo. En términos generales, hemos definido este documento como "un acuerdo por escrito efectuado entre una organización obrera y un patrono, en el cual se especifican los términos y las condiciones de empleo para [las y] los trabajadores cubiertos por el contrato, el estatus de la organización obrera y el procedimiento para resolver disputas que se susciten durante su vigencia". Cardona Caraballo v. ACT, 196 DPR 1004, 1012 (2016); C.O.P.R. v. S.P.U., supra, pág. 319. De forma similar, hemos puntualizado que "[l]a otorgación y firma de un convenio colectivo representa el triunfo del poder de la negociación sobre la fuerza, de la cordura y la razón sobre la temeridad y la violencia, y de la necesidad que todos tenemos de vivir en armonía los unos con los otros". Aut. Puertos v. HEO, 186 DPR 417 (2012);

U.I.L. de Ponce v. Dest. Serallés, Inc., 116 DPR 348, 352 (1985).

Por otro lado, hemos destacado que el convenio colectivo es un contrato que vincula de igual manera al patrono, a la unión sindical y a los miembros individuales, quienes están obligados a cumplir rigurosamente con lo que ahí estipularon. AAA v. UIA, supra, pág. 650; San Juan Mercantile Corp. v. J.R.T., 104 DPR 86, 89 (1975); Pérez v. Autoridad de Fuentes Fluviales, 87 DPR 118, 123-24 (1963). **Así las cosas, el convenio colectivo tiene fuerza de ley entre las partes, siempre y cuando su contenido no contravenga las leyes, la moral ni el orden público.** (Negrillas suplidas). Cardona Caraballo v. ACT, supra, pág. 1013; J.R.T. v. Junta Adm. Muelles Mun. de Ponce, 122 DPR 318, 333 (1988). Además, se rige por las disposiciones del Código Civil relativas a los contratos, a menos que se disponga expresamente lo contrario. C.F.S.E v. Unión de Médicos, 170 DPR 443, 450 (2007); Luce & Co. v. Junta del Rel. Trabajo, 86 DPR 425, 440 (1962).

Sin embargo, aunque estos convenios colectivos vinculan al patrono, a la unión sindical y a los miembros individuales, no deben considerarse como simples contratos que consagran derechos individuales. Más bien, deben ser vistos como instrumentos que crean relaciones e intereses dentro del marco de la política pública laboral estatal. C.O.P.R. v. S.P.U., supra, pág. 320.

En cuanto a las obligaciones de las uniones sindicales, en JRT v. UTLG, 110 DPR 237, 243 (1980), interpretamos la doctrina de la justa representación, la cual fue desarrollada por el Tribunal Supremo federal en el caso Vaca v. Sipes, 368 U.S. 171 (1967), y posteriormente reiterada en Hines v. Anchor Motor Freight, Inc., 424 U.S. 554 (1976). Dentro de este marco, afirmamos que la doctrina de la justa representación impone a las uniones sindicales la obligación de actuar de buena fe, sin discriminación ni arbitrariedad, y de velar por los intereses de los miembros a quienes representan. Por lo tanto, la unión sindical debe proceder de manera honesta, basándose en una investigación completa y justa. J.R.T. v. U.T.I.G., supra, págs. 243-244.

**D**

En este punto, es menester señalar que el derecho al acceso a la justicia constituye un pilar esencial de la política pública que guía al sistema judicial de Puerto Rico. Exposición de Motivos de la Ley Núm. 201 de 2003, conocida como Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, 4 LPRA sec. 2 et seq. En términos más concretos, comenta el profesor Efrén Rivera Ramos que **"[p]or acceso a la justicia nombramos el conjunto de condiciones que facilitan o dificultan el que determinados grupos, sectores o personas puedan hacer uso equitativo de los mecanismos y procesos [necesarios] para la prevención de la violación de los derechos, para la solución de controversias y para la obtención de remedios legales"**.

(Negrillas suplidas). E. Rivera Ramos, Las múltiples caras del acceso a la justicia, en Primer Congreso Acceso a la Justicia – XXII Conferencia Judicial 8 (2005).

A la luz de lo anterior, el acceso a la justicia no se limita al acceso a los tribunales, aunque esto último forma parte importante del fenómeno. E. Rivera Ramos, El acceso a la justicia en Puerto Rico: Antecedentes, desarrollos y retos, 86 Rev. Jur. UPR 801, 802 (2017). En esencia, se trata de evaluar en qué medida las personas y los grupos afectados pueden disfrutar efectivamente de los derechos que el ordenamiento les reconoce o debería reconocerles. Íd. Dicho de otro modo, hasta qué punto podemos cerrar la brecha entre la declaración formal de derechos y su disfrute real. Íd.

De otro lado, en palabras del ex Juez Presidente señor Hernández Denton, el acceso a la justicia "incluye que [las y] los ciudadanos estén enterados de sus derechos y cómo exigirlos, que tengan acceso a un experto del derecho, que los procedimientos judiciales sean económicamente accesibles, y que la justicia se imparta sin atrasos". F. Hernández Denton, Acceso a la justicia y el estado de derecho, 81 (Núm. 4) Rev. Jur. UPR 1129, 1132 (2012). Como vemos, esta afirmación es contundente, ya que parte de la premisa de que existe un procedimiento judicial verdaderamente accesible. Alvarado Pacheco y otros v. ELA, 188 DPR 594, 617 (2011).

En nuestro ordenamiento jurídico, **"existe una política judicial que fomenta el mayor acceso posible de [las y] los ciudadanos a los tribunales para que sus controversias puedan ser resueltas en los méritos"**. Negrón v. Srio. de Justicia, 154 DPR 79, 93 (2001). **Por ello, como últimos intérpretes de la Constitución, tenemos la delicada encomienda de analizar los planteamientos constitucionales que las partes presenten**. Alvarado Pacheco y otros v. ELA, supra, pág. 617. Este deber resulta esencial para garantizar que tan vital documento conserve su relevancia y vigencia frente a los problemas socioeconómicos y políticos de nuestra época. López Vives v. Policía de P.R., 118 DPR 219, 227 (1987). A fin de cuentas, la estabilidad y permanencia de la Constitución de Puerto Rico depende de su capacidad para adaptarse y responder a los distintos problemas sociales, económicos y políticos a los que enfrenta nuestra sociedad.

Por lo tanto, resulta fundamental procurar un sentido amplio, y no meramente estricto, de la naturaleza jurídica del acceso a la justicia. Véase, L. Estrella Martínez, Acceso a la justicia: Derecho humano fundamental, 1ra ed., San Juan, Eds. SITUM, 2017, pág. 18. Por estas razones, debemos aspirar a una visión amplia que incorpore esas tendencias para facilitar una disponibilidad real de instrumentos judiciales, o de otra índole, previstos por el ordenamiento jurídico que permitan la protección de derechos o la resolución de conflictos. Íd., pág. 31.

**E**

Es ampliamente conocido que el Artículo II, Sección 7, LPRA, Tomo 1, de la Constitución de Puerto Rico garantiza a toda persona el derecho al debido proceso de ley antes de ser privada de su propiedad o libertad. Esta protección también está consagrada en las Enmiendas V y XIV de la Constitución de Estados Unidos. Enmdas. V y XIV, Const. EE. UU., LPRA, Tomo 1.

Hemos destacado que el debido proceso de ley se manifiesta en dos (2) vertientes distintas, a saber: la sustantiva y la procesal. La dimensión sustantiva exige que "los tribunales examin[e]n la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas". Fuentes Bonilla v. ELA et al., 200 DPR 364, 394 (2018); Rivera Rodríguez & Co. v. Stowell Taylor, 133 DPR 881, 887-888 (1993). Por su parte, la vertiente procesal requiere que la privación de los derechos propietarios y libertarios se lleve a cabo mediante un proceso justo y equitativo. Picorelli López v. Depto. de Hacienda, 179 DPR 720, 735-736 (2010); Rivera Rodríguez & Co. v. Stowell Taylor, supra, págs. 887-888.

En consonancia con este mandato constitucional, **el Tribunal Supremo federal ha reconocido desde antaño que el derecho de una persona a ser escuchada en corte es un principio esencial del debido proceso de ley**. En particular, en Windsor v. McVeigh, 93 U.S. 274 (1874), el Tribunal

enmarcó este derecho dentro de los principios fundamentales del Derecho natural.

De manera específica, hemos reiterado en numerosas ocasiones que las garantías mínimas del debido proceso de ley comprenden el derecho a: (1) recibir una notificación adecuada del proceso; (2) ser juzgado o juzgada ante un juez o una jueza imparcial; (3) **tener la oportunidad de ser oído u oída**; (4) contrainterrogar a las y los testigos y examinar la evidencia presentada en su contra; (5) contar con la asistencia de un abogado o una abogada; y (6) obtener una decisión basada en el expediente del caso. (Negrillas suplidas). <u>Román Ortiz v. OGPe</u>, 203 DPR 947, 954 (2020).

## III

Teniendo en cuenta la discusión previamente expuesta y adoptando una interpretación amplia, en contraste con la interpretación restrictiva utilizada por la Mayoría de los miembros de este Tribunal, resulta evidente que la decisión tomada en el día de hoy no solo limita varios derechos constitucionales, sino que también representa un obstáculo significativo para el acceso efectivo a la justicia.

En primer lugar, esta decisión afecta <u>el acceso a los foros judiciales</u>, lo cual constituye el elemento más básico del acceso a la justicia. Esto se debe a que se les priva a los recurridos de la posibilidad de acudir a un tribunal para resolver su reclamo constitucional de recibir igual paga por igual trabajo, ya que, según la interpretación de la Mayoría de los miembros de este Foro, dicha acción

trastocaría la política pública de la negociación colectiva.

Según discutido anteriormente, la interpretación del derecho a la negociación colectiva no debe realizarse de forma aislada, sino que debe considerar otros derechos e intereses involucrados, buscando un equilibrio entre todos ellos. S.I.U. de P.R. v. Otis Elevator Co., supra, pág. 842. En otras palabras, esta interpretación debe llevarse a cabo dentro del contexto general de la sociedad, teniendo en cuenta las limitaciones propias de la vida común. Íd. **A mi juicio, esto implica valorar el impacto que este principio puede generar en otras áreas o derechos fundamentales, como el derecho constitucional a recibir igual remuneración por igual trabajo.**

Por otra parte, aunque es cierto que la disposición de recibir igual paga por igual trabajo se visualizó como un problema de desigualdad salarial entre hombres y mujeres, Mercado Vega v. U.P.R., supra, págs. 284-285, su alcance trasciende este contexto. Es fundamental reconocer que la igualdad es un principio constitucional que permea en todo nuestro ordenamiento jurídico constitucional. Así, un convenio colectivo no puede eximir al Estado de su responsabilidad de velar por la garantía de igualdad entre todas las personas que laboran para él. Por lo tanto, cualquier persona trabajadora que se encuentre en la misma clasificación o desempeñe funciones similares debe gozar de los mismos derechos y condiciones, independientemente de su

identidad o características personales. <u>Rivera Padilla et al. v. OAT</u>, supra, pág. 357.

En este sentido, la igualdad no es un derecho abstracto, sino una exigencia práctica y necesaria para asegurar que todas las personas trabajadoras sean tratadas con la misma dignidad y respeto. A partir de esto, surge una pregunta fundamental: ¿cómo podemos salvaguardar esta protección de igualdad si no reconocemos una causa de acción contra un patrono para impugnar las escalas salariales establecidas en un convenio colectivo al que la trabajadora o el trabajador está suscrito, en virtud del principio constitucional de igual paga por igual trabajo?

Además, es ampliamente conocido que **un convenio colectivo, al ser un contrato, tiene fuerza de ley entre las partes, siempre que su contenido no infrinja las leyes, la moral ni el orden público.** (Negrillas suplidas). <u>Cardona Caraballo v. ACT</u>, supra, pág. 1013; <u>J.R.T. v. Junta Adm. Muelles Mun. de Ponce</u>, supra, pág. 333. Sin embargo, al no reconocer una causa de acción contra el patrono al amparo del derecho constitucional a recibir igual paga por igual trabajo, hoy se cierra la puerta a la posibilidad de analizar si el Convenio colectivo en cuestión viola estos principios básicos de los contratos.

Desde otro enfoque, esta decisión mayoritaria también infringe el derecho al debido proceso de ley de los recurridos, en particular su derecho a ser debidamente escuchados en corte. **Si bien los recurridos podrían ser**

**escuchados en una acción judicial que presenten contra la unión sindical a la que pertenecen, al amparo de la doctrina de justa representación, no tendrán la oportunidad de ser adecuadamente escuchados en relación con su reclamo constitucional contra su patrono.** Cabe recordar que el derecho de toda persona a ser oída por un tribunal no solo garantiza la oportunidad de presentar sus argumentos, sino que también asegura la debida protección de sus derechos. Al no reconocer una causa de acción contra un empleador —en este caso, la Autoridad de los Puertos de Puerto Rico— y sus empleados para impugnar las escalas salariales establecidas en un Convenio colectivo al que están sujetos, se les priva a los recurridos de una de las garantías más fundamentales y esenciales de nuestro sistema legal.

A mi juicio, esta decisión, en lugar de eliminar obstáculos para que las personas puedan reclamar y defender sus derechos constitucionales, ha creado uno nuevo. Si se demuestra que una unión sindical no cumplió con su deber de representación justa al negociar asuntos que afectan derechos constitucionales, esta sería responsable. Sin embargo, ¿dónde queda la otra parte que suscribió el convenio colectivo, a saber: el empleador? Esto nos lleva también a preguntarnos: ¿qué papel juega el empleador en este contexto? A mi parecer, también podría ser considerado responsable. Sin embargo, una Mayoría de este Tribunal ha pautado por fiat judicial una inmunidad total y prima facie al empleador. Por lo tanto, disiento respetuosamente.

**IV**

Por lo expuesto, era fundamental reconocer que un empleado o empleada sindicalizada tiene el derecho de presentar una causa de acción contra su patrono para impugnar las escalas salariales establecidas en un convenio colectivo al que esté suscrito, basándose en el principio constitucional de recibir igual paga por igual trabajo, establecido en la Sección 16 del Artículo II de la Constitución de Puerto Rico. Esto, mientras ejerce simultáneamente una causa de acción contra su representante sindical bajo la doctrina de justa representación. Después de todo, el ejercicio simultáneo de ambas acciones se ajustaría al principio fundamental de economía procesal que rige nuestro ordenamiento civil, cuyo objetivo es facilitar el acceso a los tribunales y la gestión del proceso para garantizar "una resolución justa, rápida y económica de todo procedimiento". Regla 1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 1.

De haberse resuelto que una empleada o un empleado sindicalizado tiene el derecho de presentar una reclamación judicial contra su patrono para impugnar las escalas salariales acordadas en un convenio colectivo al que esté suscrito, basándose en el principio constitucional de igual paga por igual trabajo, los empleados públicos de la Autoridad habrían tenido acceso pleno y efectivo a un foro judicial para defender su derecho constitucional. Sin embargo, lamentablemente, la decisión de hoy priva a los

empleados sindicalizados de la posibilidad de acudir a los tribunales de Puerto Rico para proteger el principio constitucional que garantiza este derecho, consagrado en la Sección 16 del Artículo II de la Constitución de Puerto Rico. Además, perdimos la oportunidad de darle pleno vigor al alcance de este principio constitucional. W. Vázquez Irizarry, Derecho constitucional, 84 Rev. Jur. UPR 573, 588-589 (2015).

Por todas estas razones, disiento respetuosamente.


Luis F. Estrella Martínez
Juez Asociado