ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| AUTORIDAD DE ENERGIA ELECTRICA DEPUERTO RICO Peticionaria<br><br>v.<br><br>UNIÓN DE EMPLEADOS PROFESIONALES INDEPENDIENTES DE LA AUTORIDAD DE ENERGIA ELECTRICA (UEPI) Recurrida | TA2025AP00366 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2024CV07128<br><br>Sobre: Impugnación o confirmación de laudo |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

Rivera Marchand, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 15 de octubre de 2025.

Comparece la Autoridad de Energía Eléctrica de Puerto Rico, (AEE o peticionaria) y nos solicita la revocación de la *Sentencia*[1] notificada el 5 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario). En esta, el TPI modificó el laudo de arbitraje emitido el 1 de julio de 2024 por el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos (NCA).

Por los fundamentos que exponemos a continuación, denegamos la expedición del auto de *certiorari.*

**I.**

La Unión de Empleados Profesionales Independientes de la AEE (UEPI) presentó una solicitud de arbitraje ante la NCA. Ello, por

---

[1] Mediante *Resolución* emitida el 25 de septiembre de 2025, acogimos el recurso de epígrafe como un *certiorari,* conforme la Regla 32 (C) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), donde establece que el recurso de *certiorari* es el vehículo procesal adecuado para revisar las resoluciones, órdenes o sentencias finales de un laudo de arbitraje del Tribunal de Primera Instancia.

entender que, la AEE realizó una subcontratación por servicios profesionales en violación del Artículo IV del Convenio Colectivo entre la UEPI y la AEE. Como parte del procedimiento de arbitraje, la árbitro consignó que el asunto a resolver era y citamos:

> Que la Honorable Árbitro determine si el Patrono incurrió en violación al Artículo IV del Convenio Colectivo o no. De resolver que el Patrono incurrió en violación al Convenio Colectivo, que determine el remedio adecuado.[2]

A la celebración de la audiencia de arbitraje requerida, comparecieron el Lic. Antonio G. Torres Peña (asesor legal) y el Sr. Miguel Cruz Ayala (señor Cruz Ayala o presidente de la UEPI) como los representantes de la UEPI. El Sr. Cruz Ayala testificó y presentó los siguientes documentos: Exhibit 1-Convenio Colectivo 2014-2018, vigente por cláusula de auto renovación; Exhibit 2-Página 5, intitulada "Professional Services Contract-CPM PR, LLC" y Exhibit 3-Datos del Contrato, con vigencia desde el 7 de marzo de 2022 hasta el 30 de junio de 2022. Cabe destacar que, a pesar de estar debidamente notificada, la AEE no compareció a la vista señalada.

Luego de evaluar la prueba presentada y el expediente ante su consideración, la árbitro dictaminó que, la AEE incurrió en violación al Artículo IV del Convenio Colectivo. En particular expuso que, según su apreciación, la prueba presentada resultó ser suficiente para sostener que, el 7 de marzo de 2022 la AEE firmó un contrato con la Compañía CPM PR, LLC (Compañía) para trabajos que realizaban directamente los empleados de la unidad apropiada de la UEPI. Añadió que, la AEE compensó a la Compañía por la cantidad de $400,000.00 en concepto de mano de obra sin previamente notificar a la UEPI, incurriendo así en la violación del Artículo IV del Convenio Colectivo. En su consecuencia, ordenó el pago de la penalidad por la cantidad de sesenta mil dólares ($60,000.00).[3]

---

[2] Entrada 1, SUMAC TPI. Exhibit IV de la Demanda.
[3] Entrada 1, SUMAC TPI. Exhibit V de la Demanda.

Inconforme con la referida determinación, la AEE compareció ante el TPI, y solicitó la revocación del laudo en cuestión e hizo los siguientes señalamientos:

> Erró [e]l Negociado de Conciliación y Arbitraje al concluir que el Patrono incumplió el Artículo IV del Convenio Colectivo, relacionado a subcontratación, a pesar de la Unión no haber presentado en su totalidad el contrato mediante el cual alegadamente se llevó dicha subcontratación.

> Erró el Negociado de Conciliación y Arbitraje al fundamentar su decisión en evidencia documental que no fue presentada en la Vista, violando así el Debido Proceso de Ley de[l] aquí peticionario.

> Erró el Negociado de Conciliación y Arbitraje al conceder un remedio que no fue contemplado en el Convenio Colectivo cuando el convenio establece que las decisiones emitidas por el árbitro serán conforme a derecho y al convenio colectivo.

En apoyo a su postura, arguyó que, la árbitro concedió un remedio no contemplado en el Convenio Colectivo e incurrió en un incumplimiento con las disposiciones establecidas en el *Reglamento para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos.*

A lo antes, se opuso la UEPI.[4] En esencia, arguyó ante el foro primario que los errores no se cometieron. Planteó que, la árbitro actuó correctamente al determinar que, según la prueba presentada -la cual no fue controvertida- el patrono incurrió en violación a los acuerdos entre las partes y que corresponde el pago, según lo dispuesto en el Convenio Colectivo.

Al justipreciar lo antes, el TPI emitió una fundamentada *Sentencia* en la que consignó las siguientes determinaciones de hechos:

1. La relación entre la AEE y la Unión estuvo regulada por un Convenio Colectivo cuyo periodo de vigencia se extendió desde el 15 de septiembre de 2014 hasta el 15 de septiembre de 2018.

2. El Art. IV del Convenio Colectivo indica lo siguiente sobre la subcontratación:

> Durante la vigencia de este convenio la Autoridad no podrá subcontratar labores, tareas o funciones de la unidad apropiada, según se define en el Articulo III del

---

[4] Entrada 4, SUMAC TPI.

convenio colectivo, si la misma afecta la estabilidad de empleo de los trabajadores cubiertos por este Convenio.

En el caso de que la Autoridad tenga necesidad de subcontratar, notificará por escrito a la Unión con no menos de 30 días de antelación a la subcontratación, excepto en casos fortuitos o situaciones no previsibles fuera del control de la Autoridad, en que la notificación se hará a más tardar dentro de las próximas 24 horas siguientes a la subcontratación.

La notificación en situaciones normales será a los efectos de que las partes se reúnan a discutir las razones que puedan justificar la subcontratación y comprobar que la misma no afectará la estabilidad de los trabajadores cubiertos por este convenio.

De no mediar acuerdo entre las partes respecto a si existen o no las circunstancias que justifican la subcontratación, inmediatamente la Unión solicitará y la Autoridad accederá a que se someta el asunto a la consideración de un árbitro designado por el Secretario del Trabajo. Ello no impedirá que la Autoridad, de considerar de urgencia y necesidad para el mejor y más eficiente servicio público, subcontrate la labor o tarea.

Del árbitro determinar que la Autoridad ha realizado una subcontratación en violación a las disposiciones de este Artículo, ordenará a la Autoridad, de ésta haber subcontratado, que compense a la Unión en una suma igual a un quince por ciento (15%) del costo de la mano de obra en que incurra el subcontratista en la labor realizada que para efectos de esta compensación se fija por las partes en un cincuenta por ciento (50%) del costo total de la obra.

De la Autoridad verse obligada a subcontratar labores de la unidad apropiada por razón de no haber personal disponible para realizar las mismas, verificará que no haya personal regular cesanteado o suspendido de la UEPI que esté capacitado y cualificado para realizar dicho trabajo. En caso de existir este personal la Autoridad lo empleará con prioridad para realizar el trabajo.

Los términos de "subcontratación" y "subcontrato" en este Artículo se considerarán que incluyen, sin que se entienda como limitación, cualquier contrato formal, orden de servicio, acuerdo verbal o escrito de subcontratación, si los trabajos son de la unidad apropiada definida por las partes en el Artículo III de este convenio.

3. El Art. IX del Convenio Colectivo indica lo siguiente sobre los procedimientos de resolución de querellas y arbitraje:

Sección 1. Durante la vigencia de este convenio la UEPI se compromete a someter todas las quejas, querellas, controversias o reclamaciones que surjan en relación con la interpretación, implantación, administración y aplicación de este Convenio, al Procedimiento de Resolución de Querellas y Arbitraje creado en este Artículo.

Sección 2. El empleado profesional afectado y/o su representante someterá la querella por escrito ante el

primer nivel de responsabilidad no más tarde de los cuarenta y cinco (45) días laborables siguientes a la fecha en que ocurrió la acción en la cual se basa la querella.

Sección 3. Niveles de Responsabilidad

Primer Nivel:

[...]

Tercer Nivel:

Si el Presidente de la UEPI no está de acuerdo con la determinación del primer nivel de responsabilidad en aquellas querellas en que no acuda ante el Jefe de División de Asuntos Laborales deberá notificar por escrito a este último dentro de los diez (10) días laborables siguientes a recibirse dicha contestación su intención de someter la querella a arbitraje, o de lo contrario, el caso se entenderá terminado. De notificar su intención, el caso será sometido a un árbitro para que éste determine la solución final de la controversia.

Sección 4. Designación de Árbitro

El procedimiento de arbitraje será de acuerdo con las reglas que a estos efectos tiene el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos.

Sección 5. Dicha decisión será conforme a derecho y al convenio colectivo siendo la misma final e inapelable para las partes y esta deberá establecer los fundamentos en los  cuales se basa la misma.

[...]

4. El 19 de enero de 2023, la Unión completó una Solicitud Para Designación o Selección de Árbitro, sobre la Reclamación Q-22-67-2097, donde presentó la siguiente alegación, "[l]a Autoridad de Energía Eléctrica violó el Convenio Colectivo al subcontratar labores de unidad apropiada sin seguir el procedimiento de Artículo [I]V".

5. El 20 de marzo de 2024, el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos celebró una vista en referencia al caso A-23-511, a la cual la AEE no compareció.

6. Durante la vista, la Unión presentó la siguiente prueba documental:

   a. Exhibit 1- el Convenio Colectivo 2014-2018, firmado entre la UEPI y la Autoridad;
   b. Exhibit 2- la página seis (6) de un documento titulado "Professional Services Contract – CPMPR, LLC"; y
   c. Exhibit 3- una (1) hoja titulada "Datos del Contrato".

[7] Posterior a la vista, la Unión presentó un alegato, al cual le anejó la totalidad del contrato con enumeración 2022P0064.

[8] El 1 de julio de 2024, la árbitro emitió el Laudo en el caso A-23-511, el cual dispuso:

   Determinamos que el Patrono incurrió en violación al Artículo IV del Convenio Colectivo. Por fuerza de ello,

> ordenamos el pago de la penalidad dispuesta por el referido Convenio a la Unión, por la cantidad de sesenta mil dólares ($60,000.00), dentro de los próximos noventa (90) días contados a partir de la certificación y archivo del Caso Núm. A-23-511.[5]

Tras consignar y discutir el derecho aplicable a la causa, el TPI declaró parcialmente ha lugar la petición presentada por la AEE. Razonó que, debido a que el contrato en disputa era por la cantidad de $400,000.00 y quedó probada la violación al Convenio Colectivo, correspondía el pago de 15% de la mitad del costo total de la obra a favor de la UEPI. A esos efectos, procedió a modificar el Laudo de Arbitraje A-23-511, emitido el 1 de julio de 2024, a los únicos efectos de reducir la compensación a $30,000.00, conforme el cómputo que dispone el Convenio Colectivo.

Luego de no prosperar en su petitorio de reconsideración ante el foro primario,[6] la AEE recurre ante esta Curia y levanta los siguientes señalamientos:

> Erró el Tribunal de Primera Instancia al validar la actuación de la árbitro, al concluir que su decisión fue conforme a derecho, pese a que esta se fundamentó en documentación que nunca fue admitida en la Vista ni formó parte del expediente administrativo del caso.
>
> Erró el TPI en la determinación de hecho núm. 6 al reconocer la presentación de un alegato por parte de la Unión, donde alegadamente se anejó la totalidad el contrato, a pesar de que dicho no formó parte del expediente administrativo del caso.
>
> Erró el TPI al no reconsiderar la sentencia a la luz de la falta de evidencia sobre el Contrato en cuestión, a base de la totalidad de la prueba desfilada y del expediente administrativo.

Mediante *Resolución* emitida el 25 de septiembre de 2025, ordenamos a la parte recurrida exponer su posición. Transcurrido el término sin cumplir, según advertido, procedemos a resolver sin el beneficio de su comparecencia.

## II.

### A. Expedición del auto de *certiorari*

---

[5] Entrada 8, SUMAC TPI.
[6] Entradas 9 y 10, SUMAC TPI.

La Regla 32(C) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025), establece que **el recurso de *certiorari* es el vehículo procesal adecuado para revisar** las resoluciones, órdenes o **sentencias finales de un laudo de arbitraje del TPI.** Como se sabe, el recurso de *certiorari* es el mecanismo discrecional disponible para que un tribunal apelativo revise las resoluciones y órdenes interlocutorias de un tribunal de menor jerarquía. Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.52.1; *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023). Las Reglas de Procedimiento Civil disponen que el Tribunal de Apelaciones expedirá el recurso de *certiorari* cuando el peticionario recurra de una resolución u orden sobre remedios provisionales, *injunctions* o de la denegatoria de mociones dispositivas. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023).

En ese sentido, el auto de *certiorari* es limitado y excluye aquellas determinaciones interlocutorias que pueden esperar hasta la determinación final del tribunal para formar parte de un recurso de apelación. *800 Ponce de León v. AIG*, 205 DPR 163, 191 (2020). El delimitar la revisión a instancias específicas tiene como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp.*, et al., 202 DPR 478 (2019). La Regla 52.1 de Procedimiento Civil de 2009, *supra*, viabiliza por excepción la revisión de: (1) decisiones sobre admisibilidad de testigos de hechos o peritos esenciales, (2) asuntos relativos a privilegios evidenciarios, (3) anotaciones de rebeldía, (4) casos de relaciones de familia, (5) asuntos de interés público y (6) situaciones en la cuales esperar a la apelación constituye un fracaso irremediable a la justicia.

Los criterios que el Tribunal de Apelaciones examina para ejercer la discreción sobre la expedición del *certiorari* se encuentran en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, 198 DPR 626 (2017).[7] El foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en los cuales se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *Banco Popular de Puerto Rico v. Gómez Alayón y otros,* 2023 TSPR 145, resuelto el 19 de diciembre de 2023.

## B. El Convenio Colectivo y la revisión de los laudos de arbitraje

La negociación colectiva está revestida de un gran interés público ya que constituye un medio eficaz para promover la estabilidad y paz industrial. *Landrau Cabezudo y otros v. Autoridad de los Puertos de Puerto Rico y otros*, 2025 TSPR 7, resuelto el 15 de enero de 2025. Por ello, los convenios colectivos no deben ser catalogados como meros contratos que consagran derechos individuales, sino que se deben considerar instrumentos que crean relaciones e intereses a la luz de la política pública laboral estatal. *AAA v. UIA*, 199 DPR 638, 648 (2018).[8] Según ha sido interpretado, el convenio colectivo es consistente con el principio de la libertad de contratación, pues una vez las partes prestan su consentimiento, éste se convierte en la ley entre las partes. *C.O.P.R. v. S.P.U.,* 181

---

[7] La referida Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro). *Íd.*

[8] Citando a *C.O.P.R. v. S.P.U.,* supra, pág. 320.

DPR 299, 320 (2011). No obstante, lo anterior, cabe recordar que todo acto que goza del principio de la libertad en la contratación no puede contravenir las leyes ni la Constitución. *Íd.*

Ahora bien, como regla general, en los convenios colectivos las partes establecen voluntariamente un sistema de quejas y agravios. *Íd.*, pág. 326. Mediante dicho sistema de quejas y agravios que las partes establecen, se precisa el contenido y alcance de las disposiciones contractuales. Así las cosas, en el convenio colectivo las partes pueden pactar que sus reclamos se canalicen mediante un proceso de arbitraje. En tales casos, tanto las uniones como los patronos sustituyen a los tribunales por los árbitros. *Íd.*

A tales efectos, el Tribunal Supremo ha reconocido que el arbitraje constituye un medio más apropiado que los tribunales para la resolución de controversias, por ser más flexible, y menos técnico y oneroso. *AAA v. UIA,* 200 DPR 903, 922 (2018). Según se desprende de lo anteriormente expuesto, el arbitraje es un procedimiento de poderes delegados y mediante el convenio colectivo se le confiere la autoridad al árbitro para que evalúe y resuelva las controversias que allí se especifican. A. Acevedo Colom, *Legislación protectora del trabajo comentada,* 8va ed. Rev., Puerto Rico, Ed. Ramallo Printing Bros., 2005, pág. 393.

En cuanto a los laudos arbitrales, en nuestra jurisdicción rige la norma de que éstos gozan ante los tribunales de justicia de una especial deferencia. *C.O.P.R. v. S.P.U., supra,* pág. 363-364. No obstante, lo anterior, la auto-restricción judicial reconocida en nuestra jurisdicción no es absoluta. En aquellos casos en los cuales el convenio colectivo disponga que el laudo debe ser conforme a derecho, cualquier parte afectada puede impugnarlo en el foro judicial, teniendo los tribunales la facultad para revisar su corrección y validez jurídica. A. Acevedo Colom, *op. cit.,* pág. 395; *U.G.T. v. Corp. Difusión Púb.,* 168 DPR 674, 682-683 (2006).

Cuando el procedimiento de arbitraje es conforme a derecho, ello significa que el árbitro no puede ignorar o dejar pasar por desapercibidas las normas interpretativas en el campo laboral de derecho sustantivo, emitidas por el Tribunal Supremo de Estados Unidos y el de Puerto Rico. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 DPR 62, 68 (1987). De igual modo, las decisiones de los tribunales de primera instancia, de las agencias administrativas y los laudos arbitrales se reputarán persuasivas. *Íd.* Es por ello, que, el Tribunal no debe inclinarse fácilmente a decretar la nulidad del laudo, a menos que el mismo no haya sido resuelto conforme a derecho. No obstante, cabe indicar que una discrepancia de criterio con el laudo no justifica la intervención judicial, pues destruye los propósitos fundamentales del arbitraje, que es resolver las controversias rápidamente, sin los costos y demoras del proceso judicial. *Íd.*

La parte que solicita la revocación o anulación de un laudo por alguna de las instancias permitidas deberá exponer las razones que den lugar a su pedido y aducir la prueba necesaria que sostenga su petición. Como antes expresado, que el laudo se haga conforme a derecho no implica que los tribunales vayan a invalidarlo por el mero hecho de que exista una discrepancia de criterio. Para invalidar el laudo, resulta necesario que surja de forma evidente que el mismo no se resolvió conforme a derecho. *Íd.*

Carente disposición a los efectos de que el laudo de arbitraje sea conforme a derecho, los tribunales no deben revisar alegados errores en la apreciación de la prueba o en la aplicación de las normas de derecho, a pesar del sentir concurrente o disidente que puedan albergar. En estos laudos, las determinaciones de un árbitro, en cuanto a los hechos y en cuanto a derecho, son finales y no revisables por los tribunales, aunque haya mediado error por parte de éstos en la apreciación de los hechos y el derecho aplicable,

y aun cuando el tribunal hubiese llegado a una conclusión distinta. *C.O.P.R. v. S.P.U.,* supra.

**III.**

El peticionario sostiene que debido a los errores incurridos por el foro primario procede ejercer nuestra facultad discrecional para expedir el auto de *certiorari* y revocar el dictamen recurrido. Ello, por entender que, la decisión arbitral confirmada por el TPI, violenta el debido proceso de ley y refleja un proceder arbitrario e irrazonable. Sostiene que, la UEPI no acreditó la totalidad del contrato entre la AEE y la Compañía como prueba y ante tal ausencia de evidencia sustancial en el expediente, no se fundamentan las determinaciones de hecho consignadas por la arbitrio, por lo que procede revertir el laudo recurrido.

Como se sabe, los tribunales no debemos inclinarnos fácilmente a decretar la nulidad de un laudo. Aun así, dicha doctrina no es absoluta y permite nuestra intervención si el árbitro no procedió conforme a Derecho. Ante una solicitud de revisión de laudo, el foro primario viene obligado a corroborar el debido proceso de ley, los hechos medulares, el Convenio Colectivo y el derecho aplicable. Debido a lo anterior, la revisión judicial en la etapa apelativa se circunscribe a los estrictos parámetros de análisis jurídico, definidos por la normativa antes expuesta.

Sobre dichas bases, y tras entender sobre la presente causa con particular atención a la evaluación del expediente, no hallamos que el foro primario se haya excedido en el ejercicio de discreción, al analizar la razonabilidad del laudo impugnado y si fue conforme a derecho. De nuestro examen sosegado de la *Sentencia* recurrida surge que, el foro primario examinó concienzudamente los argumentos de las partes y tomó en consideración que la árbitro justipreció la totalidad de la prueba presentada y quedó satisfecha que la misma resultó suficiente para sustentar las alegaciones y

remedios solicitados por la UEPI. Según su apreciación se logró establecer la numeración del contrato, los puestos que fueron subcontratados y que los trabajos los realizaron los unionados, así como los nombres, las firmas de los contratantes y la fecha que se firmó el contrato sin previa notificación a la UEPI. Lo antes, en clara violación al Artículo IV del Convenio Colectivo. El TPI añadió que, no está en controversia que, la AEE no compareció a la vista, por lo que renunció a su derecho a la confrontación de la prueba presentada por la UEPI. Consideró que, ante este cuadro fáctico, no se quebrantó el debido proceso de ley durante el proceso de arbitraje.

Al revisar sosegadamente el recurso discrecional ante nos, colegimos que, el peticionario no nos ha puesto en posición para intervenir con el dictamen recurrido. La revisión judicial realizada por el foro primario encuentra apoyo en el expediente y no se aparta de la correcta interpretación del Convenio Colectivo y el derecho aplicable. En ausencia de fraude, conducta impropia, falta de debido proceso de ley o jurisdicción, violación a la política pública o controversias pendientes de resolución, no procede la revisión judicial solicitada.

Por los fundamentos expuestos, no identificamos criterio alguno conforme la Regla 40 de nuestro Reglamento, *supra*, que sostenga revertir la presunción de corrección del dictamen recurrido.

**IV.**

Por todo lo antes, denegamos la expedición del auto de *certiorari* según solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones